Daniel, J.
It is admitted that there is no decision of this Court settling in express terms the principles in *304 volved in the first, third, fourth and fifth exceptions of the appellant Staples to the report of the commissioner stating his account of administration on the estate of Tandy Morris deceased. It is also coneeded by the comisel ori both sides that the questions thus presented are in no wise affected by our statutes regulating the administration of the assets of decedents; and we have been referred to the elementary writers, to the precedents of the English Chancery Courts, and the decisions made by the Courts of our sister States in like cases, for the light to guide us to their solution. The rule stated by the Judge in his instructions to the commissioner, • that “joint or partnership creditors are not entitled to eredit out of the separate estate of a partner until separate creditors are paid,” it is admitted by the counsel for the appellant, is one that has generally obtained in England in cases of bankruptcy; but they deny its propriety, and challenge their adversaries to shew that it has ever been established as a general rule in equity, governing the distribution of the assets of deceased partners. In making this demand for authority, the counsel for the appellant are, it seems to me, shifting upon their adversaries a burden that ought properly to be borne by themselves. The labouring oar is with them. Upon the death of one of the members of a partnership, the duty of discharging the engagements of the concern is, at law, assigned to the survivors. At law, there is no right to demand of the representative of the decedent payment of the debts of the firm. The surviving partner or partners have a legal right to the possession and control of the social effects, and are bound to discharge all the social debts; whilst the representative of the deceased partner, taking under his management the separate estate, is bound, observing certain priorities growing out of the different degrees of dignity among the debts, to apply it to the satisfaction of the separate creditors. When from any cause the *305 distribution of the estate of a deceased partner is brought within the cognizance of a Court of Equity, it seems to me to be rather reversing the order of things to require of the separate creditors to exhibit precedents shewing their superior claim to be satisfied out of the separate estate. The law has given it to them, and they who seek the establishment of a different rule ought to be required to shew that the one prevailing at law is unjust in principle, or harsh in its operations; that it violates some equitable precept, or is in conflict with precedents established by the Courts of Chancery in like cases. The research of the counsel of the appellant has fallen short of furnishing the Court with any decisions of the English Chancery Court declaring the rule, which, they have argued with so much ability to shew, ought to govern us in this case. On the other hand, we have, been referred to a long list of cases shewing that upon the dissolution of a partnership by bankruptcy, the English Chancery Court has adopted the rule announced by the Judge below in his instruction to the commissioner. On the bankruptcy of one of the members of a partnership, there being a solvent partner or a joint estate, these cases shew that the Chancellor forbids the partnership creditors receiving any dividends from the estate of the bankrupt till the separate creditors are first satisfied. This with a slight modification, is what takes place at law when the dissolution of the partnership is. caused by the death instead of the bankruptcy of one of its members. The rule of the Chancery Court postpones the creditors of the partnership till the separate creditors of the bankrupt are satisfied; whilst at law, upon the death of a member of the firm, his estate is devoted to the payment of his particular debts, and is wholly exempted, even should there be a surplus after satisfying them, from any pursuit by the creditors of the firm. The representative of the deceased partner proceeds upon the requirements of the law to make that *306 disposition of the assets among the creditors which the Court of Equity says ought to have been made had the decedent been declared a bankrupt. Why not then pertuh the law to have its way ? Instead of there being any ^n the language of the statutes, under the operation of which the rule in bankruptcy has grown up, calling upon the Courts of Equity, in disposing of the bankrupt’s estate, to observe the preferences which they have established in favour of the separate creditors, a strict and literal compliance with the requirements of the acts would lead to a different result. These acts require the ordering and disposing of the effects of the bankrupt for the satisfaction of all his creditors. It cannot be said that the partnership creditors have not a right to be satisfied out of the estate of each individual partner during his life; yet the Courts of Equity in making disposition of the bankrupt’s estate among his creditors, declare that the joint creditors shall not share with the separate creditors in the separate estate, nor the separate creditors with the joint creditors in the joint estate. In so doing they seem to be exercising a restraint on the legal rights of the joint creditors under the acts-, above mentioned.
If it be right and proper in cases of bankruptcy so to order and dispose of the assets of the deceased partner as to inhibit any appropriation of the dividends to the satisfaction of the joint debts till all the separate debts are fully paid, notwithstanding the phraseology of the statutes would seem to call for a distribution among all the creditors, it follows, a fortiori, that it cannot be wrong or improper in a Court of Equity, when called upon to distribute the assets of a deceased partner, to follow the law which conducts to the same equitable result.
It is contended, that this rule in bankruptcy is one merely of convenience, and it cannot be denied that there are dicta of eminent Chancellors referring it to no *307 better origin. A brief examination, however, of the authorities will, I think, suffice to shew that it has a stronger foundation, and that it has been more generally-sustained as resting on broad principles of equity, which would sanction its application not only to cases of bankruptcy, but also to cases like the one before us.
Grow, in his Treatise on Partnership, justifies the rule on the ground, that “ the joint creditors having increased the joint fund, and those who make advances on the separate credit, having created the separate fund, natural justice requires that the funds so constituted should be applied to the respective demands. It has accordingly been long established as a rule of the Court, that where there are different sets of creditors, each estate shall be applied exclusively, in the first instance, to the payment of its own creditors, the joint estate to the joint creditors, and the separate to the separate; and that neither the joint creditors shall come upon the separate estate, nor the separate upon the joint, but only upon the surplus of each that shall remain after each has satisfied its own creditors respectively.” Page 368, 442.
Collyer lays down the same rule and traces it to certain equities subsisting between the partners themselves. Page 336.
Judge Story, in his Commentaries on the Law of Partnership, reviews all the decisions upon the subject, and treats the rule as one which is not confined in its application to cases of the dissolution of partnerships by bankruptcy, but is extended to cases where the dissolution is caused by the death of a partner. He says : “ Still another enquiry may remain in cases where the estate of the deceased partner is not sufficient to pay all his separate debts and all the joint debts; and that is, whether the debts are to be paid pari passu out of the assets of the deceased, or either is entitled to preference. The general rule would seem to be, (as it is in bankruptcy,) that the joint creditors have a priority *308 of right to payment out of the joint estate, and the separate creditors a like right of priority to payment out of the separate estate; and the surplus, if any, is divisible among the other class of creditors.” He proceeds to point out some exceptions to the rule; and whilst he admits that it rests on a questionable and unsatisfactory foundation, he still maintains that it is not so purely artificial as it has sometimes been suggested to be; and that “ public repose requires it to be left undisturbed, as it may not be easy to substitute any other rule which would uniformly work with perfect equality and equity in the mass of intricate transactions connected with commercial operations.” Pages 516-19 and 541.
Chancellor Kent, in the 3d volume of his Commentaries, declares the rule to be a general one, applicable in the distribution of the assets of bankrupt and insolvent partners; and defends it on general principles of equity. “ So far (he says) as the partnership property has been acquired by means of partnership debts, those debts have, in equity, a priority of claim to be discharged; and the separate creditors are only entitled, in equity, to seek payment from the surplus of the joint fund, after satisfaction of the joint debts. The equity of the rule, on the other hand, equally requires that the joint creditors should only look to the surplus of the separate estates of the partners after payment of the separate debts.” Upon a review of all the cases, English and American, he regards the weight of authority as greatly in favour of the rule, and expresses his conviction that “it is upon the whole reasonable and just.”
The counsel for the appellant have not referred us, and I have been unable to find a passage in any elementary writer, justifying the conclusion that the rule is inapplicable to the distribution of the effects of a deceased partner; and the distinguished authors above cited, have fallen into a singular error, if the English cases to which they refer, can he properly regarded as estab *309 lishing principles that would restrict the application of the rule to cases in bankruptcy.
For a long period, the English Chancellors refused to allow a joint creditor any remedy against the representative of a deceased partner, who left a survivor, even when there was no controversy among the different classes of creditors. They followed the law in leaving the whole burden of the partnership debts to rest on the survivors. Even as late as the case of Hoare v. Contencin, 1 Brown’s Ch. R. 27, decided in 1779, Lord Tharlow questioned this equitable right altogether, even as against the representative of the deceased partner alone; and in the still later case of Ex parte Kendall, Lord Eldon expressed his surprise that Courts of Equity had not left parties, thus situated, to their fate at law. That such a right exists is beyond all doubt, but, until very recently, the joint creditor, in order to entitle himself to the relief, was required in England, as he still is in Virginia, first to shew that the survivor was insolvent or bankrupt.
This state of the law taken in connection with the great variety of causes which, under the bankrupt acts, authorize the suing forth of a commission by the creditors against partners who are insolvent or in failing or doubtful circumstances, most probably accounts for the almost entire absence of any decisions in the English Chancery Courts settling directly what are the equitable rights of the two classes of creditors to satisfaction out of the estate of a partner dying, leaving a separate estate insufficient for the payment of both. The contests between the two classes of creditors must, necessarily, have generally arisen under the commissions in bankruptcy. So far, however, as we have the report of any decisions upon the question arising in the administration of the assets of a deceased partner, those decisions are favourable to the views of the appellees. In the case of Barker v. Goodair, 11 Ves. R. 86, Lord Eldon ad *310 mits that the rale in bankruptcy had to some extent been pursued in the administration of assets; and the case of Gray v. Chiswell, 9 Ves. R. 118, affords an instance of the direct application of the rule to the administration of the effects of a deceased partner. That case has not been overruled; and I see nothing peculiar in the state of facts which it presents, or in the reasoning of the Chancellor, to authorize us in inferring that the rule there adopted should not have a general application.
In the decisions of the Courts of our sister States in like cases, it is conceded there is nothing like uniformity ; but the weight of authority furnished by them is, I think, greatly in favour of the rule declared by the Judge below. It has been adopted in Maryland, see M’Culloh v. Dashiell's adm’rs, 1 Harris & Gill 96; in South Carolina, Tunno v. Trezevant, 2 Desau. 268; Woddrop v. Ward, 3 Id. 203; in Louisiana, Morgan v. His Creditors, 20 Martin’s R. 57; and in New York, Murray v. Murray, 5 John. Ch. R. 60; Egberts v. Wood, 3 Paige’s R. 517; Wilder v. Keeler, Id. 167; and Jackson v. Cornell, 1 Sanford’s R. 348.
It is true that in the case of Payne v. Matthews, 6 Paige 19, the Chancellor permitted a solvent partner, who had paid joint creditors out of his own private funds, to come in with the separate creditors for a share of the estate of a deceased partner. It is to be observed, however, that he does not overrule the case of Wilder v. Keeler, but cites it with approbation. Yet without referring to any precedent justifying him in making the case before him an exception, and without in any manner attempting to shew that the solvent partner had by paying the debts of the firm acquired any rights as against the separate creditors of the deceased partner, which did not belong to the joint creditors before the payment, he proceeds to make the decree, resting it on the supposed absence of any express authority forbidding him to make it, and justifying it on the ground *311 that such a decree would be in consonance with the spirit of the statutes of his State requiring equality among creditors in the distribution of the estate of an insolvent decedent.
In the late case of Jackson v. Cornell, before cited, the rule of equity is declared to be uniform and stringent, that the property of a copartnership shall be applied to the partnership debts to the exclusion of the individual creditors of the partners; and the creditors of the individual partner are to be first paid out of the separate estate: and a general assignment of his separate property, made by an insolvent partner, preferring the creditors of the firm to the exclusion of his own, was declared wholly void as to the latter.
In Pennsylvania the application of the rule was refused in the case of Bell v. Newman, 5 Serg. & Rawle 78. The estate before the Court for distribution in that case, was, however, the estate of the partner who had survived, against which the creditors could have proceeded at law; a circumstance strongly relied on by Duncan, Judge, (one of the two constituting the majority of the Court,) as justifying the Court in permitting the creditors of the firm to participate with the separate creditors in the distribution of the individual estate.
The case of Allen v. Wells, 22 Pick. R. 450, cited to shew that the rule has been repudiated in Massachusetts, only shews that it has not been adopte.d there in cases at law. That was the case of an attachment. The joint creditors had levied their attachment on the individual property of the partner before he made the. assignment in favour of his separate creditors; and the true question was, whether the separate creditors had at law such priorities as entitled them to defeat the lien of the attachment. The Judge, instead of rejecting the rule as inapplicable to the distribution of an insolvent partner’s estate, in equity, declares the decisions in its *312 favour as entitled to great consideration, but denies that the rule can be properly applied to cases where liens have been acquired in favour of the joint creditors by proceedings at law.
The case of Tuckers v. Oxley, 5 Cranch 34, decided by Chief Justice Marshall, does not I think establish any principle which would conflict with the application of the rule contended for by the appellees to the distribution of the estate of a deceased partner. That was also a case at law. Judge Marshall in that case construed our bankrupt law, which he states is in all the features affecting the question, copied from that of England, as giving a legal right to a joint creditor, in case of the bankruptcy of a member of the firm, to prove his debt before the commissioners, and to receive his dividends in proportion with the other creditors: and held that any restraint upon this right fell solely within the province of a Court of Equity. And he decided that in a suit at law brought by the assignee of a bankrupt for the recovery of a debt due to him individually, the defendants had a right to offset against the demand a debt due to them by a firm of which the bankrupt had been a partner. I do not understand him as questioning the authority of those cases in which the English Chancellors “ exercising at the same time their common law and equitable jurisdiction,” have permitted the partnership creditors to prove their debts, but “ withheld the dividends till it should be ascertained how much of it a Court of Equity would permit the creditor to receive.” Nor do I understand him as saying that such equitable restraint might not be exercised to the extent of throwing the partnership creditors on such residue only of the separate estate as might remain after satisfying the separate creditors.
That I am correct in supposing that Judge Marshall did not, by any thing said by him in this case, mean to be understood as denying the equity of the rule con *313 tended for by the appellee, will be made still more manifest by referring to his opinion in the case of the United States v. P. T. Shelton & Co. subsequently decided by him in the United States Circuit Court at Richmond, in May 1821. In that case P. T. Shelton and Walter Shelton, the partners constituting the firm of Shelton & Co. being in failing circumstances, made an assignment of their effects for the payment of their partnership debts generally; and Waller Shelton made an assignment of his private estate for the payment of his private debts. At the date of these assignments Shelton & Co. were indebted to the United Slates for duties. In a suit brought by the United States claimiug the right to be satisfied out of both funds in preference to the creditors under either deed, Judge Marshall decided that the claim of the United States to have such priority under the “insolvent laws” was valid ; but directed that no recourse should be had to the fund of Walter Shelton, “till the social fund was exhausted, or shewn to be inadequate to the satisfaction of the debt;” and assigned as the reason for such direction, that “it seemed to be the dictate of justice that partnership transactions should be charged in the first instance on the partnership fund, aud private transactions on the private fund, when there is not enough for the payment of all.” 1 Brock. R. 517.
I have said that the rule in question has never been directly the subject of adjudication in this Court; and yet I do not see how the decree made in the case of McCullough & others v. Summerville, 8 Leigh 415, can be sustained without impliedly recognizing principles from which the rule would legitimately follow. From the report of that case it appears that “ by a deed executed in the individual name of the maker, and purporting on its face to convey his individual property for the payment of individual creditors named in the deed, in two classes, according to a certain order and preference therein established, a considerable amount of property, *314 real and personal, is conveyed and assigned to trustees; that property however includes not only the whole individual property of the grantor, but also the whole partnership effects of a mercantile firm of which he is ^ managing partner, (the other partner being a nonresident,) and some of the creditors of each class provided for in the deed are, in fact, creditors of the firm, and not of the grantor individually, though all the creditors provided for have debts justly due them, either from the firm or the individual partner.”
In a suit in equity brought by Sommerville, one of the partnership creditors provided for in the deed, and who had obtained a judgment and sued out a capias ad satisfaciendum upon his debt, under which M'Cullough the grantor in the deed, was in custody, alleging misconduct in the trustee, and that the property was unsafe in his hands, and seeking to have the property secured and properly applied by the Court, an injunction was allowed ; and upon a final hearing the Chancellor set aside the deed as fraudulent, and directed the funds in the power of the Court, which were the proceeds of a sale of the partnership effects, and also the individual property of M'Cullough, to be distributed among the creditors ratably, according to the amount of their respective demands; applyiug the proceeds of the partnership effects to the payment of the partnership debts, and the proceeds of the individual property of M'Cullough to the payment of his individual debts, and the balance, if any there should be of either fund, in aid of the other. Upon an appeal, this Court, consisting of Judges Carr, Cabell and Brockenbrough, decided that though the deed so far as it conveyed the social effects to pay the separate debts was invalid, yet that it was not therefore fraudulent and void. That it was proper to reform the deed by throwing each class of creditors upon its own fund; thus reaching, in the language of the order, the justice of the case, and the probable iutent of the grantor. *315 And the Court proceeded to decree, that the social fund should be applied first to the payment of the partnership creditors in the first class their whole debts, and that the surplus should be distributed among the partnership eve1 ditors in the second; and that in like manner, the individual creditors in the first class should each receive his whole debt out of the separate fund, and that the surplus should be distributed among the individual creditors in the second class.
The grantor had made a deed which the Court declared was wholly inoperative so far as it conveyed the social effects for the indemnity of his separate creditors. If justice and equity would not have required of the grantor in this state of things, seeing that the whole partnership effects must go to the joint creditors, to devote his individual estate to the payment of his private creditors, how could the Court come to the conclusion that he would have so desired and intended? There was nothing in the case manifesting the intentions of M’Cullough except the deed. The preferences therein made by the grantor are not founded on the character of the debts as partnership or private. He makes no distinction between his creditors as being social or individual, nor between the two funds as joint or separate. Prom the commissioner’s report made in the case, it appeared that the aggregate of the social and individual funds was more than sufficient to discharge all the debts enumerated in the first class, whether partnership or separate. The social fund, however, was not quite sufficient to discharge the social debts in the first class — the surplus arising from the separate fund. Why, after satisfying the separate debts in the first class, did not the Court apply this surplus to discharge the small balance due to the partnership creditors in the same class ? Again, why did it not apply the residue that would have still remained, to the satisfaction of all the creditors in the second class, pari passu ? Manifestly, because it regarded such a dis *316 position of the funds inequitable ; for there was nothing in the terms of the deed to forbid it. It seems to me clear that this Court took the same view of the equilies existing among the creditors that the Chancellor had taken. The Chancellor, regarding the whole deed as void, and having the funds in his power, makes what he regards an equitable distribution, by applying each fund to its appropriate debts. Whilst this Court, treating the deed as inoperative in part, does the same thiug, with the exception that it preserves the preferences which the grantor had made amoug the creditors of the same character. It seems to me, therefore, that there is, both in the decree of the Chancellor and in that of this Court, a clearly to be implied recognition of the rule that where the effects of a firm and its individual members are brought into a Court of Chancery for distribution among the creditors, it is right and equitable to throw each class on its peculiar fund. That such an inference is fairly to be deduced from the decree of the Court is made still more manifest by a reference to Judge Carr’s opinion. In commenting upon the provisions of the deed, he says: “ The purpose for which the effects are conveyed is the payment of bona fide creditors,- of claims established beyond question. And though the deed does not devote the social fund exclusively to the social creditors, and the separate fund to the separate creditors, does it comport with the mild and beneficent spirit of equity, for this cause, (the result doubtless of ignorance and mistake,) to annul the deed? Is it not better to reform it by throwing each class of creditors upon its own fund, and thus reach the real justice of the case, and the probable intention of the grantor ?”
From an examination of the authorities, I am satisfied that the law, as declared by the Judge in his instructions to the commissioner, is well established. I am not prepared to say that the Courts of Equity might not have declared a rule more satisfactory, but in view *317 of the weight of authority in its favour, I feel no disposition to disturb that which has been adopted. The rule which devotes the whole of the partnership effects to the satisfaction of the partnership debts, has long been settled law in England, and has been recognized by this Court in various cases. So loug as the separate creditors are, under this rule, denied any participation in the joint funds, I see no propriety in discarding the other portion of the rule which has in a measure grown out of it, which for a long period has been most generally treated by the Courts of Equity as its correlative, which tends to produce equality among the two classes of creditors, and in some degree to compensate the separate creditors for their exclusion from the joint fund.
Indeed, it seems to me that there are much stronger objections to the first part of the rule than any that can be urged against the latter; the first being once recognized. This quasi lien of the partners upon the partnership funds, upon which the preference in favour of the joint creditors rests, is the offspring of the Law Merchant ; and is founded upon views of commercial policy rather than upon any obvious principles of equity. There is nothing in the stipulations of an ordinary co-partnership which ex vi termini import any such lien in favour of its creditors; and the preference which has gradually been established in their favour, finds no analogy in the ordinary modes by which a fund is set apart for the indemnity of one class of creditors to the exclusion of all others. The present law upon the subject was not settled in England without opposition both in the Courts of Common Law and Equity; and in one of our sister States, at least, the Courts still refuse to regard it. In Vermont, the creditor of an individual partner is permitted to levy his execution on a moiety of the partnership goods, and to sell without any reference being had to the state of accounts between the partners; or any regard being paid to the demands of the joint creditors.
*318 The law which gives this preference to the joint creditors is, however, too well settled to be questioned. So treating it, I am not disposed to repeal the rule that tempers to the separate creditor its unjust exclusiveness.
The joint creditors having, then, as I have endeavoured to shew, no right to resort to the assets of Tandy Morris till his separate creditors are paid, it is difficult to perceive how Staples, by paying off their demands, could acquire any right to reach them.
At the death of Morris, if I am right in yielding to the authorities cited, there arose a right both at law and in equity, in favour of his individual creditors to have satisfaction of their debts out of his estate in preference to the claims of the partnership creditors. No subsequent actings and doings between other parties could in any manner affect their rights. If the proposition contended for in behalf of Staples, be law, then, in all cases, where a partner dies leaving a joint fund insufficient for the payment of all the social debts, and a solvent surviving partner, the practical, substantial result will be to let the partnership creditors in upon the separate estate after exhausting the social. Yet if there is any rule established by the authorities referred to, admitting of no exception, it is that where there is either a joint estate or a solvent partner, the partnership credh tors shall be denied any participation with the individual creditors in the separate estate. The effect would be utterly to destroy the efficacy of the rule as a protection to the separate creditors.
Staples has not, therefore, in my opinion, any right to share with the separate creditors of Morris, on account of the general balance growing out of the payment of the partnership debts since his death.
He occupies however different ground in respect to the bond of Bagwell, Smith & Hanna. This was A joint and several obligation, on which the obligees might have, proceeded at law either against the survivor or the *319 representative of the deceased, against Staples as surviving partner, or as the administrator of Morris. No Court could have deprived them of this right. I do not see how a Court of Equity could have inhibited them from proceeding at law to obtain entire satisfaction of their debt out of the assets of Morris. Instead of relying on the credit of the firm and taking an engagement by which upon the death of either of its members they would have lost their legal recourse against his representatives, they have contracted for and obtained an obligation by which that recourse is preserved. And the partners, by consenting to give such a security, have come under obligations and recognized rights both as regards Bagwell, Smith & Hanna, and the separate creditors of each, which would not have arisen out of a mere engagement of the firm. It does not seem to me to be any sufficient answer to say that this debt was contracted for goods furnished for the firm. It was perfectly competent for either partner to secure the payment of this debt by giving a lien on his separate estate, which might have wholly excluded his separate creditors both during his life and after his death, till such lien was satisfied. The latter have therefore no right to complain that a form of contract has been adopted by which this debt is merely placed on an equal footing with their own. If the partners did not intend to place this debt on a footing different from that occupied by the mere engagements of the firm, why adopt a different form of contract ? They each stood as the security of the other for such other’s proportion of this debt; and Staples having paid the whole debt, occupies in equity the same relation to the estate of Morris for his proportion of it that Bagwell, Smith & Hanna occupied for the whole. As by paying the mere partnership debts, he did not acquire a right which the creditors themselves did not have, to share with the separate creditors in the separate estate, so here having paid a debt binding on such separate es *320 tate, he ought not to be deprived of the right which the ,. , , - . creditor had to proceed against it.
I concur with Judge Allen in opinion that the recital in the articles of agreement between the partners that s^10u^ share equally in the losses and profits, does not attain to the dignity of an undertaking by specialty to pay each his due share of the losses, but was intended merely to designate the interest of each in the concern ; and that on that score Staples has acquired no right to rank as a specialty creditor of Morris. I also concur with him, however, in opinion that the undertaking of each to advance the sum of one thousand dollars to launch the firm, is a direct and positive covenant, for all damage occasioned by the breach of which, Staples stands as a separate creditor of Morris by covenant.
I also concur with Judge Allen, and for the reasons stated in his opinion, that Staples as the administrator of Morris has a right to retain for whatever may be in arrear on account of the covenant to advance the one thousand dollars, and on account of Tandy Morris' proportion of the bond to Bagwell, Smith & Hanna, and any other obligations, if such there be, of the same character, against all debts not of a superior dignity. This necessarily involves a settlement of the partnership accounts. If upon a statement thereof there should be found to be a balance in favour of Staples over and above the amount which he is thus permitted to retain, for such balance I am of opinion Staples has no right of satisfaction out of the personal assets of Morris, till all his separate debts are fully paid. On all the other questions in the case, I concur in the decree of this court.
Allen, J. The question presented by the instructions of the Judge to the commissioner, is one of great importance in the administration of the legal assets of decedents; and although it has been frequently discussed and acted upon elsewhere, it has never been directly adjudicated by this Court.
*321 The counsel for the appellant, whilst conceding that the separate creditors of a deceased partner are not entitled to come upon the joint estate until all the joint creditors are satisfied, deny the converse of the proposition. They insist that the doctrine which holds that no responsibility of the deceased arising out of partnership transactions, can be satisfied out of his separate estate, until all his separate creditors are paid, is wholly inapplicable to the administration of legal assets. They contend that a rule adopted in England, in administering bankrupt estates, has given rise to the idea that joint creditors can come upon the surplus only of the separate estate, after all separate creditors are paid, whatever may be the dignity of their debts. This rule in bankruptcy, it is argued, conflicts with the general law respecting the rights of creditors, and is unsupported by any principle of equity. And as we have no act of bankruptcy in Virginia, that this Court is not warranted by any rule of law or principle of equity in establishing the doctrine here.
The general rule prevailing in bankruptcy confines the separate and joint creditors, to the separate and joint estates respectively; and the surplus only after satisfying such priorities can be reached by the other class of creditors. Judge Story in his Commentaries on the law of partnership, 530, § 376, after a careful review of the cases, states this to be the result of all the authorities. Nor do I conceive that the general proposition as stated by him has been varied by the decisions in Ex parte Harris, 2 Ves. & Beam. 210, and Ex parte Yonge, 3 Ves. & Beam. 31. The first case as there reported, decides that the mere circumstance of the indebtedness of one partner to the firm, apart from fraud, is not sufficient to let in the partners on the separate estate until the separate creditors are satisfied. In the second case, the bankrupt partner had fraudulently abstracted a portion of the joint funds; and on this ground alone the part *322 nership was let in upon the separate estate. The debt was treated as a debt due from an individual to the firm, which the other partners might have filed their bill to compel him to repay. Though at law the two solvent Partners could not, strictly speaking, be styled the creditors of the bankrupt; and though if all were solvent, the three could not maintain an action against one of them; yet in equity the money so abstracted by one is the debt of the two, to be applied by them as trustees for the three.
The leading case which established the rule in bankruptcy is Ex parte Crowder, 2 Vern. R. 706. It announces the proposition in general terms, that the joint funds were first applicable to joint debts, the separate effects to the separate debts; and the surplus of each fund, respectively, after satisfying the joint and separate debts, should go to the liquidation of debts of a different class. No rule of law or principle of equity is referred to as authority for the doctrine. Lord Chancellor King, in Ex parte Cook, 2 P. Wms. 500, followed the decision in Ex parte Crowder, as a settled practice, and as a resolution of convenience.
In Ex parte Hunter, 1 Atk. R. 223, Lord Hardwicke adhered to the rule. In Ex parte Hayden, 1 Bro. Ch. Cases 454, and Ex parte Hodgson, 2 Brown’s Ch. Cases 5, Lord Thurlow repudiated the doctrine. In Ex parte Elton, 3 Ves. R. 238, Lord Rosslyn re-established the rule of Ex parte Crowder. Lord Eldon, in Ex parte Kensington, 14 Ves. R. 447, in allusion to these fluctuations of the rule in cases of bankruptcy, declared that though the principle of that rule appeared to him to be doubtful, the rule was settled and ought not to be shaken. In Barker v. Goodair, 11 Ves. R. 86, he says, “ how the rule originally became law he did not kuow; we have in some degree pursued it in the administration of assets, though very tenderly.” In Gray v. Chiswell, 9 Ves. R. 118, he observes that it is extremely difficult to *323 say upon what the rule in bankruptcy is founded, and in Ex parte Bevan, 10Ves. R. 107, that he never could seo why a creditor having both a joint and a several security, should not go against both estates. But it is settled that he must elect.
In England, therefore, the rule in bankruptcy, subject to certain exceptions, seems to be fixed. As between creditors of the joint and separate estates, where there is any joint estate which cari be realized, or a solvent partner, the joint creditor is postponed to the separate creditor; and can come in upon the surplus only, after the several creditors are satisfied.
In this country, the rule has not been uniformly adhered to.
The case of Tuckers v. Oxley, 5 Cranch 34, was a decision under the bankrupt act of the United States. Judge Marshall, in delivering the opinion of the Court, remarked, that “as the bankrupt law of the United States, so far as respected that case, was almost, if not completely, copied from that of England, the decisions that had been made on that law by the English Judges may be considered as having been adopted with the text they expounded.” Yet, in view of those decisions, the Supreme Court held, that a joint debt may be set off against the separate claim of the assignee of one of the partners. The Court, in this case, alludes to the doctrine that a joint creditor might become a petitioning creditor for the bankruptcy of one of the joint debtors, and upon such separate commission come in on the separate estate pari passu with the separate creditors. This, it is conceded, constitutes one of the exceptions to the general rule in bankruptcy. But the case was not decided on any such narrow ground. Judge Marshall observes, in effect, “ that it is undoubtedly unjust that the joint creditors, being able to obtain payment from one of the joint debtors, should satisfy that claim entirely out of the separate estate of the other joint *324 debtor to the exclusion of his separate creditors. And it is probable that a Court of Chancery might restrain this use of their legal rights within equitable limits. But suppose both to be bankrupt or insolvent and unato Pay ^ debt; would it not be equally unjust to apply the estate of each individual to the discharge of the several debts, to the entire exclusion of their joint creditors, who, previous to their bankruptcy, had a legal and equitable right to satisfaction out of the separate estate of each ?”
In conformity with this view of the legal rights of the joint creditors to charge the separate estates of each of the joint debtors, the case of Tuckers v. Oxley is decided.
Judge Marshall construed the decision in Ex parte Elton, as merely suspending the payment of the joint debt out of the separate estate, until it should be ascertained how much of the separate estate a Court of Equity would permit the joint creditor to receive, after first exhausting the joint estate; and not as postponing the joint creditor until the separate creditors were entirely satisfied.
The decision in Ex parte Elton so construed, he treated as affirming .instead of negativing the legal right of a partnership creditor to come on the separate fund. The case of Ex parte Elton has since been considered as establishing a different rule. But the construction given to it by Judge Marshall shews how strong was his conviction of the justice of a contrary rule; and hence the effort to reconcile the decision in that case with the conclusion at which the Supreme Court arrived.
In Allen v. Wells, 22 Pickering 450, the Supreme Court of Massachusetts decided that the separate property of each partner is liable to be attached for the debts due from the firm, and that the lien acquired by such attachment is not to be defeated by a subsequent *325 attachment by his separate creditor; although the converse of the proposition, giving the firm creditors priority over the creditors of one of the partners as to the partnership effects, had been established in Pierce v. Jackson, 6 Mass. R. 242, and uniformly followed.
In New York, Chancellor Kent, in Murray v. Murray, 5 John. Ch. R. 60, recognizes the rule in bankruptcy, that joint creditors could not come in upon the separate estate until all the separate creditors were paid. And this, as he says, on the plain rule of equity, that he who has two funds to resort to, shall not satisfy his debt out of that one of them to which another creditor can only resort, until he has exhausted the other fund. Other cases in Neto York have followed the same rule.
But in the case of Payne v. Matthews, 6 Paige 19, the Chancellor decided, that where upon the death of one of the members of an insolvent firm, the surviving partner, who was solvent, was obliged to pay the debts of the firm out of his own property, and the separate estate of the deceased was insufficient for the payment of all his debts, the balance due from his estate to the surviving partner on account of partnership transactions, must be paid ratably with the other debts of the decedent of the same class, according to the provisions of the revised statutes. It does not appear that these statutes, as referred to in the case, make any change as to joint and several debts, or do more than prescribe the order in which debts of different degrees shall be satisfied. Unless there is something more in the statutes than appears in the report, the decision would seem to be in conflict with the general rule in bankruptcy and with the other decisions in that State.
In Bell v. Newman, 5 Serg. & Rawle 78, the Supreme Court of Pennsylvania determined that the rule in bankruptcy had no relation to the administration of assets. Judge Duncan, in an elaborate opinion delivered in that case, observes, that it would be strange to *326 apply rules founded on statutes of bankruptcy, when we have no such system, to a case where there is no bank- ^
The Courts of Maryland and South Carolina have adopted the rule in bankruptcy. M'Culloh v. Dachiel’s adm’r, 1 Harris & Gill 96; Wooddrop v. Ward, 3 Desaus. R. 203.
It is not surprising, in view of so many conflicting opinions and decisions, that Justice Story, in his Treatise on Partnership, 541, § 382, should remark, “after the repeated doubts expressed upon the subject by the most eminent Judges, it is not perhaps too much to say, that the rule rests perhaps on a foundation as questionable and as unsatisfactory as any rule in the whole system of our jurisprudence.” Though he does not deny, but, on the contrary, affirms it to be the doctrine of equity, it does not seem to have commended itself to his approbation.
If, however, the rule flows from any legal principles governing the rights of the parties, or from any well established doctrines of equity, we are bound to follow it, no matter in what class of cases it may have been first established. If we look to the nature of the contract and the legal rights and remedies of the creditor of a firm, irrespective of the equities of the partuers as between themselves, the right of the joint creditor to satisfaction out of the separate estate of each partner, would seem to be clear. Whilst the firm continues and is solvent, no lien exists upon the joint property in favour of their creditor. He must proceed at law and obtain judgment. He may levy his execution on the-joint estate, or the separate estates of all or either. When he levies on the separate estate of either, the effect of such levy cannot be avoided by any separate creditor having no specific lien. Until the joint effects are bound by the delivery of the execution to the sheriff, they can be sold and transferred to strangers or to either of the part *327 ners. The dominion of the firm over them is as complete as that of the individual partner over his separate estate. Such are the rights of the joint creditor of the firm, and of the partner respectively; and such being the responsibilities of the joint and separate estates , to the satisfaction of the joint creditors during the continuance of the partnership and up to the moment of dissolution, when the dissolution of a firm takes place by the death of one of the partners, why should this accident affect the rights of a creditor? The forms of legal proceeding may be varied; his action at law must he against the surviving partner; but why should a change in the remedy impair his rights? Equity regarding the substance, and not the form, treats a partnership debt as several as well as joint. The death of one partner does not extinguish the debt as respects the estate of such partner; that was always considered as ultimately responsible, and according to the modern cases in England, the joint creditor may proceed at once against it, before exhausting his remedies against the surviving partner.
That the debt of a firm is several as well as joint has been settled in this Court by the cases of Sale v. Dishman's ex'or, 3 Leigh 548, and Galt's ex'or v. Calland's ex’or, 7 Leigh 594. In these cases the obligation of one of the partners was construed as the separate contract of each; being given for a consideration moving to the firm: and neither the execution of the sealed instrument, or the death of one of the partners, could operate in equity a discharge of the debt as respected the estate of a deceased partner. If, then, the joint creditor has the right to obtain satisfaction out of the estate of the deceased partner, and a clear remedy at least in equity by which that right can be asserted, why should he not stand in the same position with every other creditor of the deceased, and be entitled to come in for satisfaction according to the dignity of his debt ? By any *328 other construction, an unquestioned right, existing in full vigour up to the moment of the dissolution of the partnership, by the death of one of the partners, will be greatly impaired, and sometimes utterly destroyed by acc^ent- The rule in bankruptcy does produce this result, and therefore it becomes necessary to enquire whether it rests upon any well established rule of law or principle of equity.
The case of Ex parte Crowder, 2 Vern. R. 706, asserts in general terms, that each class of creditors can only come in on the surplus, after the separate and joint creditors respectively are satisfied. Prom the manner in which the propositions are stated, the one was, in all probability, supposed to be the correlative of the other. Equality is a favourite doctrine in equity; and as the joint effects could only be reached by the separate creditor after the joint debts were paid, it would at first view appear to be equality, and therefore equity, that the joint creditor should be excluded from the separate estate until the separate creditors were satisfied. The doctrine has sometimes been traced to this source, and it is one of the grounds relied on in argument, to sustain the principle of the bankrupt rule. But the argument is more specious than solid. By the terms of the contract of partnership, certain equities subsist in respect to the joint effects, amounting to something like a lien. Neither partner has any distinct right to any portion thereof until the joint debts are paid, and then the surplus is to be distributed in proportion to the different interests. The joint creditors must, of necessity, be paid, in order to the administration of justice to the partners themselves. When the partnership is dissolved by death, though the legal title may in some respects vest in the survivor, the representative of the deceased partner has still a right to insist that the property should be applied to the partnership debts: Story on Partners. 135, § 97; Id. 470, § 326; Ex parte Ruffin, 6 Ves. R. 119, *329 126; Ex parte Williams, 11 Ves. R. 3. In the last case Lord Eldon remarks, “the representative of a deceased partner, or the assignees of a bankrupt partner, are not strictly partners with the survivor or the solvent partner; hut still in cither of those cases, that community of interest remains, that is necessary, until the affairs are wound up; and that requires, that what was partnership property before shall continue for the purpose of a distribution, not as the rights of the creditors, but as the rights of the partners themselves require: and it is through the operation of administering the equities, as between the partners themselves, that the creditors have that opportunity ; as in the case of death it is the equity of the deceased partner, that enables the creditors to bring forward the distribution.” Hence it is now well settled that the separate creditor of a partner can affect by execution only the interest of that partner in the joint stock after the payment of the joint debts; he must take the undivided share of his debtor in the same manner the debtor himself had it, and subject to the rights of the other partner. Fields v. Taylor, 4 Ves. R. 396; Fox v. Hanbury, Cowp. R. 445. This condition springs from the nature of the contract of partnership. They are to pay the debts, bear equally the losses and divide the surplus; and neither can assert a claim against the other to his separate interest in the surplus, until it is ascertained that there will be a surplus to divide. But in all this the joint creditor is passive. While the partnership continues, he has no equity against, and can assert no lien on the effects of the partnership. The equity which appropriates the joint estate to the joint debts in the first instance, is not his equity, but that arising between the partners themselves. And why should an equity of one partner as against the other, to insist on the application of the joint effects to pay the common creditor, impair his rights as against either? Both, by law, are severally liable for his debt, to the full extent *330 of their separate estates; and an equity existing between themselves, to have a particular fund appropriated in the first instance to the payment thereof,-cannot lessen the ultimate responsibility of either. Nor is there any hardship in this to the separate creditor. As he had no specific lien on the separate estate of his debtor, the debtor could incumber or sell it. So he could put it into partnership stock; and by doing so, subject it to the equity of his copartner, which requires that where the firm is dissolved by death, the joint debt should be paid before any distribution is made of the surplus. There is nothing, therefore, as it strikes me, in this argument to sustain the rule in bankruptcy.
It is further argued, that the separate creditor has a legal remedy against the representative of his debtor; whilst, by the death of one partner, the joint creditor’s remedy against him is gone at law, and his estate can only be subjected in equity : and the maxim that where equities are equal, he who has the legal advantage must prevail, is invoked to justify the rule contended for. But though the remedies are different, the rights are equal; and the maxim can have no application. The debt, no matter where recovered, is the debt of the deceased, and binds his assets. Would it be seriously maintained that every creditor who is compelled to assert his claim ill a Court of Equity, is from that circumstance alone, and without regard to the dignity of his debt, not only to lose his legal priority in the distribution of the assets, but to be postponed until every creditor, who can maintain an action at law, is fully satisfied ? A debt due by one in the character of trustee, and for which the remedy is in equity, cannot, for that cause alone, be inferior in degree to a debt due by him individually, and for which he may be sued at law. A Court of Equity, and \ye are in one, would not give countenance to such an injurious discrimination against its suitors.
*331 The doctrine of marshaling funds has been relied upon as sustaining the rule in bankruptcy. To this principle of equity Chancellor Kent, in Murray v. Murray, 5 John. Ch. R. 60, seems to refer the rule. The principle is just, for equality is equity; and the case of joint and several creditors, and joint and separate estates, may present a proper occasion for its application. So thought Judge Marshall, in Tuckers v. Oxley, where he said that it is probable a Court of Equity would restrain the joint creditor in the use of his legal rights within equitable limits. The Supreme Court of Pennsylvania, proceeded upon this principle in Bell v. Newman, ubi supra. But where one creditor has two funds to resort to, equity does not require him after exhausting one, to stand by until the creditor having the one fund is entirely satisfied, and turn him over to the surplus. The most it will do where there are no priorities, is to postpone him until the creditor who has but one fund, receives as much in proportion out of this, as the former has obtained out of the other fund; and then to divide the surplus of the common fund ratably between them.
This is equality and equity; but this is not the rule in bankruptcy. By it, although the joint fund may discharge but a small fraction of the joint debt, the creditor is postponed not only until the separate creditors get as much out of the separate as he has done out of the joint estate, but until their debts are entirely paid, and then he gets the surplus if any.
Unable to trace the rule in bankruptcy to any well established principle in equity or law, others have resorted to various hypothetical reasons for it. The joint creditor it is said trusts upon the faith of the joint estate, the separate creditor upon the faith of the separate estate. If the joint creditor by law and contract has rights, these rights should not be frittered away by a hypothetical state of facts. If trusting to the joint estate he should be confined to it, and excluded from the separate estate until *332 separate creditors are paid, the fact that he so trusted should be made to appear in the particular case, and not be taken for granted and made the foundation of a gene- ♦ ral rule applying to all cases. The truth perhaps is, that ’n many> perhaps a majority of instances, credit is given to a'firm upon the known solvency and ability of some member of it. The world can see the separate estate, but knows nothing of the partnership accounts: and yét though the credit may have been so given, a presumption against the fact is to be made, and the creditor is to be thrown upon a fund about which he knew nothing, and which may be worth but little ; and excluded from that upon the faith of which he trusted, until all the separate creditors having no superior claims in law or equity are satisfied. Other fanciful presumptions in support of the rule, in most instances against the facts, are resorted to, but it would be a useless labour to advert to them all. It is sufficient to say in reference to them all, that the joint creditor has the right in law or equity to treat each partner while living, or the estate of either when dead, as his debtor until his debt is discharged ; and this being conceded, his rights ought not to be impaired upon mere vague presumptions.
This review of the prominent doctrines of equity which have been relied on to sustain the rule in bankruptcy,accounts for the surprise of Lord Eldon at such a rule being established, the doubts of Justice Story as to its propriety, and the refusal of Lord Thurlow and Chief Justice Marshall, and of the State tribunals to abide by it.
In truth the exceptions to the rule shew how utterly destitute it is of support from any well recognized doctrine of law or equity, independent of the policy of the bankrupt acts. One of these exceptions is, where the joint creditor takes out a separate commission against the bankrupt partner, he may then elect to make his proof against the separate or joint estate. Ex parte Elton, ubi supra; Story on Part. 533, § 378.
*333 If the rule arises from any principle of equity, why should the election to proceed against the bankrupt uuder a separate commission, affect the equity of the sepaV rate creditors to priority of satisfaction ?
Another exception is, when there is no joint estate and no living solvent partner, the joint creditor may , T. , . . come in ou the separate estate. If there is any joint estate, however small it may be, if it is an available fund, the joint creditor is excluded. But why should the solvency or insolvency of the joint estate affect the rights of the separate creditor, if the rule which gives him priority out of the separate estate is a general principle of equity, or is founded upon any supposed credit given to the joint fund?
The rule must be admitted to be one perfectly arbitrary and subject to strange exceptions. It rests, not upon any doctrines of the law or equity, binding upon us, but, as Lord King remarked in Ex parte Cook, 2 P. Wms. 500, it is a rule of convenience adopted in bankruptcy. So Lord Ch. Justice Eyre, in Bolton v. Puller, 1 Bos. & Pull. 539, states that bankruptcy, when it intervenes, may very much change the situation of the parties. “In the distribution to creditors a rule of convenience has been adopted. To understand it, we should see what the rights of creditors were as to execution for their debts before bankruptcy. A separate creditor might take at his election the separate estate of his debtor, or his debtor’s share of the joint estate, or both, if necessary. A joint creditor might take the whole joint estate, or the -whole separate estate of any one partner. But the rule of convenience, which has been adopted, restrains the separate creditor from resorting in the first instance to his debtor’s share of the joint property; and also restrains the joint creditor from resorting in the first instance to the separate property of his debtor. Bankruptcy has been called a statute execution; but, if it has any analogy to an execution, it is certainly very much *334 modified, and, as I take it, by the authority of the Chancellor, who is to take order for the distribution of the effects of a bankrupt.” Thus drawing the distinction between the rights of the joint creditor as they exist at law and as modified by the authority of the Chancel» lor under the policy of the bankrupt acts. As a mere rule of convenience in administering those acts there may have been good reason for adopting it.
The policy of those laws required the proceedings to be prompt. If the joint creditors came in upon the separate estate of the bankrupt partner, the separate creditors, upon the principle of marshaling effects, would have had a right to restrain them until the joint effects were exhausted. This would have required a settlement of the partnership accounts; thus creating delay, and in all cases of a separate commission leading to an immediate winding up of the concern. In many instances the joint creditors, satisfied of the solvency of the firm, might be willing to look to the joint effects and the surplus of the separate effects. Thus, by keeping the two classes distinct, a speedy distribution was made. The joint creditor too had his election if he distrusted the sufficiency of the joint estate; for we have seen he could come in with the separate creditors on the separate estate by suing out his separate commission. But if we, by analogy to the rule in bankruptcy, adopt the same rule in the distribution of intestates’ estates, we impair the legal rights of the creditor without having the apology of the bankrupt acts to justify it. Aud in adopting it, the rule is extended further, and operates more harshly than it does in England. There, as we have seen, the joint creditor may elect to go against the separate estate by suing out a separate commission. But here that privilege must be denied him. He cannot sue out a commission although he may have trusted upon the credit of the deceased partner, yet by the accident of death he is to be thrown upon the survivor, and the *335 joint effects, no matter how small; and is to be pbstponed in his recourse upon the separate estate until every separate creditor is paid in full. If the rule is adopted, surely the exceptions which to some extent temper its severity should accompany it. But it seems to me this Court has no rightful authority, in the absence of a bankrupt system, to engraft a rule growing-out of it exclusively, upon our jurisprudence. And I am of opinion that the rights of creditors in the distribution of the assets of the deceased are to be regulated and enforced according to the terms of their contract and the familiar principles of law and equity. According to these principles the contract is several as well as joint. At law he may obtain satisfaction from all or each. In equity the debt still remains due from the estate of the deceased after the dissolution of the partnership by the death of one of the partners,- and the creditor may, according to the rule now established in England, proceed at once against the representatives of the deceased. And if the doctrine of Galt v. Calland, 7 Leigh 594, should be adhered to as the law of this forum, and the creditor be required to prosecute the survivor to insolvency, before proceeding against the estate of the deceased partner, still the effect will be the same upon his rights. He is only required to exhaust the fund to which he cau, and the separate creditor cannot, resort, before coming in upon the separate estate. This, equity would require him to do at the suit of the separate creditor, even although the practice now established in England, of permitting him to proceed at once against the representatives of the deceased, should prevail. But that fund being exhausted, he has equal right at law, and in justice, to come in with any separate creditor upon the assets of the common debtor, to share equally after the separate creditor has received as much from the separate as he had from the joint estate, if the assets are equitable, and to insist on legal assets being distributed according to law.
*336 The case of Gray v. Chiswell, 9 Ves. R. 118, is the only case which has been brought to our notice, in which this rule in bankruptcy has been applied to the administration of assets. There one partner died; the surv^vor became bankrupt, and the joint creditors proved under the commission and received dividends. In England the insolvency of a firm results in bankruptcy. There was here bankruptcy in fact, before dissolution by death; and the only question really was, whether the accident of death should change the relation of the parties. It was the administration of a bankrupt estate in fact, and therefore it would have been anomalous to have applied to it a different rule from that prevailing in bankruptcy. In truth, as insolvency usually ends in bankruptcy in England, these questions can rarely arise there except in cases in bankruptcy. Having adopted a particular rule to carry out the policy of the bankrupt act which would apply to the vast majority of cases, there would be much reason to render it uniform in its application, and apply the rule from analogy to the few cases where dissolution takes place by death and not by bankruptcy, but where from the actual insolvency, bankruptcy in fact existed. The case, in view of the circumstances which controlled it, can have no application where the system of bankruptcy does not exist.
The case of M'Cullough v. Sommerville, 8 Leigh 415, it is supposed, has recognized principles from which it may be inferred that this Court treated the rule in bankruptcy as a general rule of equity prevailing in this Commonwealth. The case itself did not touch the administration of assets, and therefore has no direct bearing on the question; and for that reason, was probably not referred to in the argument. No argument is given, but an examination of the case clearly shews this point was not raised in the discussion. Judge Cabell makes no allusion to it, and Judge Carr merely refers to the general rule of throwing each class of creditors on its *337 appropriate fund, when he is discussing the propriety of reforming the deed so as to reach the justice of the case and the probable intention of the grantor. The questions really discussed and intended to be decided in that ease, were the bona fides of the deed, and the authority of one partner to convey the social effects by deed, as was done in that instance. Having decided that the deed was not fraudulent, and that one partner had the authority to make it, they determined the whole case as regarded the creditors who had obtained judgments and executions. The deed being sustained, arrested them. Where the Court found their authority to reform a deed so as materially to change its operation, after just determining it was made in good faith, and by a party having full authority to convey, I am at a loss to conceive ; and this, too, without any evidence of mistake on the part of the grantor.
The Court, too, .in reforming it, say that by doing so each class of creditors is thrown upon its own fund, and thus the justice of the case and the probable intent of the grantor is reached. The case, it must be borne in mind, was one against a subsisting firm, both partners in full life, and if authority for the rule now under consideration, it is equally authority for its application in all cases where a joint creditor seeks satisfaction out of the separate estate of one of the partners. Surely this would not be contended for in any Court. That the partnership creditor who gets his judgment against a firm may levy his execution upon the joint effects or the separate estate of each member of the firm, has never been controverted here or elsewhere, so far as I have observed. These considerations shew very clearly that whilst the real questions in which the contesting parties iu the case of M'Cullough v. Sommerville were interested, were probably fully discussed at the bar, and carefully considered by the Court, the same consideration was not bestowed upon questions arising upon the *338 details of the decree, and bearing only upon the class of preferred creditors whose priority had been sustained.
The Court, like almost every elementary writer, took for granted as a general rule in equity, fhe English rule *n' bankruptcy, without further enquirjr; and even applied it to a case of an existing firm and living partner, who was confessedly responsible in his person and to the full extent of his private fortune to the firm creditors. It would be doing great violence to the decisions of a Court to wrest them from the points really adjudicated, and make them by inference decide propositions which were never considered or discussed.
Applying these principles to this case, I think Staples, as surviving partner of the two firms, was entitled to a settlement of the partnership accounts before he should have been required, as administrator of Tandy Morris, to pay out all the assets in his hands to the other creditors. That he is entitled to be substituted to the rights of the joint creditors whose debts he has been compelled to pay out of his own funds, and entitled to retain as against the other creditors whose debts were of no higher dignity.
The will of Tandy Morris having charged his real estate with the payment of his debts, the proceeds would be an equitable fund, out of which all the creditors would have been entitled to satisfaction pari passu. 2 Rob. Prac. 83, and cases there cited. Had the settlement of the partnership accounts been directed, and the balance due to the surviving partner ascertained, after deducting what he was justly entitled to retain of the legal assets, his proportion of the real assets could have been applied to the payment of the creditors who would have been entitled otherwise to take the legal assets out of his hands. This would have been the proper course, as all the parties interested in both funds were before the Court. But by refusing to settle the partnership transactions, so as to ascertain what he was entitled to *339 charge on the respectivo funds, he has been, so far as the record discloses, cut off from both funds.
It is contended by the appellant, that under the articles of partnership of the 10th September 1831, the same being under seal, there was a covenant that all profits and losses should be equally divided; and that as the surviving partner had been compelled to pay T. Morris’ share of the losses, the balance due him constitutes a debt by specialty on common law principles, for which he might retain against debts of no higher dignity. Without dwelling on this branch of the case, it seems to me that construing the covenant by the obvious meaning and intent of the parties, as collected from the whole context of the instrument, it was the obvious intent of the parties by that clause of the agreement to designate the interest of each member of the firm in the concern, and that it does not amount to a covenant. The general contract of copartnership would lead to the same result. All profits and losses are to be equally divided in the absence of any stipulation to the contrary. And if so, then every contract of partnership under seal, would constitute a covenant from one to the other to bear losses and divide profits: for by entering into the contract by instrument under seal, to which contract the law attaches certain conditions, it might with equal propriety be contended, that the parties intended to covenant with each other to comply with them. I do not consider that by these words, which were in fact superfluous for any other purpose than to shew the interest of each in the concern, the parties intended or contemplated any change of their rights as respected each other, or the creditors of the firm, or their separate creditors.
But though the surviving partner cannot, according to my view, be treated as a specialty creditor by force of the articles, for the general balance appearing due on account, the articles contain an express covenant that each person shall furnish one thousand dollars as a ca~ *340 pital to trade on, and any one failing to furnish his one thousand dollars, shall pay legal interest to the concern until such condition is complied with; provided, how- , ~ . , over, that any one oi the .parties may require the severa* snms t0 be Pa’d UP- For this sum, the remaining partners could have sued at law. Venning v. Leckie, 13 East’s R. 6, is express to the point. There one partner agreed to take half the goods and furnish one half the amount in time for the payment thereof in case the other required it. Ellenborough, Ch. J. said. “ there are many deeds of covenant in which partners covenant each to advance a certain sum at first, and can it be said that no action would lie by one to enforce that covenant against the other, because there were accounts between them afterwards, which require unravelling in a Court of Equity?” The deceased partner here was bound to pay this one thousand dollars at first; if he failed, he was to pay interest on it. And even if that provision should be construed as saving the breach until he was requested to pay, he could not have a longer period than his lifetime. The surviving partner could have sued his representative immediately. As he occupies the position of administrator, he may retain for the amount of the debt against debts of no higher dignity; for being unable to sue, the right of retainer as against debts of no higher dignity, places him in the position of one who had sued and got his judgment. Whether this sum was in arrear or not, does not appear, and could best have been shewn on a settlement of the partnership accounts. It is objected that this claim is not set up in the answer and is first noticed in the exceptions; but to this it may be replied, that the defendant, by his answer, claimed a settlement of the whole partnership accounts; he set up no claim to any particular item. A settlement of the partnership accounts between these parties would have embraced the capital put in or agreed to be put in ; and would have shewed whether, from the state of the *341 whole accounts, it was a matter for which the deceased partner was still liable. . Although, as the case referred to proves, the amount might have been recovered at law without an account, yet as the parties were in equity, and a settlement of the whole account was necessary in order to do justice to all concerned, it would have been obviously improper to have allowed the surviving partner to have retained this sum, until by a settlement of the whole account, it had been ascertained how the general balance stood. I do not think the omission to sot up this claim specially in the answer, can affect it, should it turn out upon a settlement of the account that it was never advanced, and there is not a balance in favour of the deceased upon the general account.
It is argued that as the separate creditors were also specialty creditors, and have obtained judgments before the surviving partner paid the debts due by the firm, they have in that mode obtained the legal advantage. As this was a matter which could perhaps be made to appear only on an account of the partnership transactions, the defendant should have the benefit of that account to enable him to shew when he paid the parnership creditors to whose rights he is entitled to be substituted. The objection could not apply to the 1000 dollars, if never advanced, for the reasons before assigned. Nor, as I conceive, would it apply to the bond of Bagwell, Smith & Co., and possibly to other claims which may appear to have been of a like character. Here the administrator occupied the double character of surviving obligor and administrator; and though in De Tastet v. Shaw, 1 Barn. & Ald. 664, the Court held an executor could not at law retain for a demand, of which no account could be taken by a jury, the reason given was, that the debt claimed constituted an item in a partnership account; and it was necessary to take a partnership account to ascertain how much was due ; and this was impracticable upon the trial of an issue before a jury. *342 Here the creditors have brought the administrator into equity, seeking an account, and the reason on which that case was decided has no application. The administrator here being liable for the debts, had an interest *n ^ Payment- He could, if another had administered, have filed his bill for an account of the partnership, and obtained a decree requiring the representative of the deceased to have paid his proportion of the losses ; not being able to sue himself, he is entitled to occupy the same position as if he had sued and got his decree.
Even at law it has been held that the executor, under a plea of plene administravit, might shew that he had retained money in his hands for which he had made himself liable. Gillies v. Smither, 3 Eng. C. L. R. 460. And in equity it was decided in Bathurst v. De la Zouch, Dick. R. 460, that on a bill against an executor for an account, where he had become bound with the testator in a bond for another person, he was entitled to retain out of the assets the amount of what was due on the bond. The principle of each case justifies the allowance of the retainer here.
The decree in this case directed a sale of the real estate, and as the appeal brings up the whole decree, if it was irregular to render any decree until the partnership accounts were taken, I should be of opinion that so much of the decree as directed a sale, was premature and should be reversed; as, according to the course of this Court, the rights of the creditors should be ascertained before a sale is made.
But in this case all the parties were before the Court asking for a sale. It is true this may have been because the appellant supposed the sale would be for his own benefit. But when all the principles of the case were decided against him, it is contended such assent should not bind him. But by his exceptions and the argument filed in the Court below in support of them, whilst he asks for a settlement of the partnership accounts, he fur *343 ther asks that the real estate he mm sold no matter who shall be decided to have preference, because the whole real and personal estate would be insufficient to pay the debts. The Court in accordance with this request and the assent of all concerned, decreed a sale; and ordered a settlement of the partnership accounts if Staples required it. It seems to me the appellant has no right to complain of that as error, which was done at his own instance. He waived his right to have a full settlement before a sale should be made, and his claim, should he shew himself upon the settlement to be entitled to any thing, must be on the proceeds which it is to be presumed are still subject to the disposition of the Court according to the respective rights of the parties when they shall be adjusted.
The decree is erroneous in any aspect of the case, in reference to the interest. The account against Staples as administrator states a balance due from him as administrator, on the 15th May 1837, of 2315 dollars 30 cents, of which 422 dollars 61 cents was interest; and by the decree the whole of this sum of 2315 dollars 30 cents is directed to be paid to different creditors with interest from the 15th May 1837; thus compounding the interest. I see nothing in the case to justify such a course.
So much of the decree as is in favour of the administrator de bonis non of Samuel Morris deceased, is not objected to on the merits. Strictly, perhaps, it should have been in favour of the distributees, and not of the administrator, according to the principles decided in War-nick v. Macmurdo. The other distributees who were parties do not complain, and as it clearly appears this debt was entitled to priority over all others, and there was a sufficiency of assets to discharge it, so much of the decree against Staples should be affirmed.
The decree, so far as it directed him to pay over the residue of the assets to the other creditors, and overruled his exception as to the debt of Bagwell, Smith & Co., *344 and his exceptions for failing to settle the partnership accounts, and his claim to retain for the 1000 dollars if never advanced, and still due, and to retain for the proportion of the intestate in the bond of Bagwell, Smith & Co. and any other debts due to the joint creditors and paid by Staples out of his individual funds, as against all debts of no higher dignity, I think was erroneous, and should be reversed, and affirmed for the residue, with costs against the other creditors (except the administrator of S. Morris), and remanded.