CYRUS H. LOTHROP *vs.* CHARLES A. REED & another.

A claim for unliquidated damages, resulting from the failure to fulfil a contract to sell and deliver goods, is provable in insolvency, under the statutes of this commonwealth.

APPEAL by the assignees of the estate of Albert L. Clark, an insolvent debtor, from the decision of the judge of insolvency, allowing the proof of a claim against his estate. The plaintiff filed a declaration in the court of insolvency, setting forth the grounds of his claim, and in the superior court *Brigham,* J. sustained a demurrer to this declaration; and the plaintiff alleged exceptions. The case is stated in the opinion.

*W. E. Fuller,* for the plaintiff.

*C. A. Reed,* for the defendants.

WELLS, J. The only question raised by the demurrer is, whether the claim set forth in the declaration is such a debt as is provable, by the statute, against the estate of an insolvent debtor. The claim set forth is founded on these facts, namely: A contract by the insolvent debtor, with the plaintiff, to deliver forty-five tons of coal, at eleven dollars per ton; a delivery of five tons, and a refusal to deliver the rest, the market price having advanced in the mean time. Upon these facts the plaintiff had a just cause of action for the difference between the market value of the forty tons of coal not delivered at the time of the breach of the contract, and the contract price for the same, which difference the judge of the court of insolvency found to be three dollars per ton, or $120 in all — less the value of the five tons delivered, at eleven dollars per ton, $55; leaving a balance due the plaintiff of $65.

Under the English decisions, this claim could not be proved. Proofs under a commission in bankruptcy are limited to liquidated demands. A distinction seems to be made in some cases between claims recoverable in *indebitatus assumpsit,* and those which sound in damages merely; the latter class being held to be too indefinite and uncertain to admit of proof and allowance in such proceedings. This restricted rule, which seems to have

been adopted in the early administration of the bankrupt laws of England, has been adhered to with great uniformity. The case of *Green* v. *Bicknell*, 8 Ad. & El. 701, is exactly in point. It was a claim of precisely the same character with the present, being for the non-acceptance of goods sold, the market price having fallen, and was held not to be provable under the English bankrupt laws. The ground upon which this and most of the English decisions are placed is, that the amount of the claim cannot be determined without the intervention of a jury ; and there is no provision in their system for such a determination.

In our insolvency law, Gen. Sts. *c.* 118, § 25, the designation of "debts due and payable," and "all debts at that time absolutely due, although not payable," is not broader in terms, and would not perhaps, of itself, require a broader application than is given to the English statute. But the general scope of our statutes is manifestly less restricted than the English system. For instance, by the express terms of § 25, demands in tort, for "goods and chattels wrongfully obtained, taken or withheld," are provable. Again, by § 35, provision is made for trial by jury upon appeal; thus removing the ground which was the leading consideration with the English courts in restricting the proofs to liquidated demands.

The provisions of § 25, as to debts which may be proved ; of § 26, as to set-off of mutual debts ; of § 44, as to "debts due to the debtor," which pass to the assignee ; and of § 76, as to the debts from which the debtor may be discharged, are undoubtedly to be regarded as correlative provisions. In construing one section, and ascertaining the proper measure to be applied to the term "debt," as used therein, reference may and must be had to all the others, and to the general purpose and operation of the statute as a system.

Now in applying the provisions of § 26, courts have never been governed by the rules of law which restrict set-off as between solvent parties. In the case of *Tucker* v. *Oxley*, 5 Cranch, 34, it was held that "the bankrupt law changes essentially the relative situation of the parties; and the provisions making that change are thought by a majority of the court to have a material

influence on the words" of the section of that law relating to set-off. The same has been decided under the insolvent laws of Massachusetts, in *Aldrich* v. *Campbell*, 4 Gray, 284. In that case the court say, " Claims not liquidated and debts absolutely due, though payable in the future, are to be included." So also as to the assignment, the construction of § 44 has always been broader than the strict literal sense of the words used in its terms. The assignee takes all the debtor's rights of action which had accrued at the date of the insolvency, so far as they are founded on or relate to his property interests ; that is, all except such as are merely of a personal nature. *Stone* v. *Boston & Maine Railroad*, 7 Gray, 539. It is even held that a demand for the threefold penalty for usury passes to the assignee. *Gray* v. *Bennett*, 3 Met. 522.

That the same liberal construction was intended for the 25th section is indicated by the clause from the report of the commissioners who framed the law, as cited by the court in *Bickford* v. *Barnard*, 8 Allen, 314. In that case it was held that, in an action of trespass *quare clausum*, so much of the plaintiff's damages as arose from the asportation of goods had been discharged by the defendant's discharge in insolvency, although it had not been in fact offered for proof. In *Gray* v. *Bennett*, 3 Met. 522, it is remarked by Mr. Justice Hubbard, in considering the insolvent laws of Massachusetts, that " the word ' debt' is of large import," and " in its popular sense includes all that is due to a man under any form of obligation or promise." In *Brown* v. *Lamb*, 6 Met. 203, the same judge observes, " The word ' debts ' in the statute is used in its broadest latitude." In the same case it is also said that " the decisions upon the English statutes, while they furnish helps to enable us to arrive at just conclusions, do not constitute legal precedents binding us in the construction of our own statute." In *Bangs* v. *Lincoln*, 10 Gray, 600, the judge who gave the opinion enumerates as claims not provable and therefore not discharged, " contingent debts, executory covenants, guaranties, and the like." In *Barker* v. *Mann*, 4 Met. 302, it was held that a claim which was to have been paid in work was provable, and therefore discharged by proceedings

under our insolvency laws. The same was held as to a note payable in specific articles, under the bankrupt laws of the United States, in *Chandler* v. *Windship,* 6 Mass. 310, and this decision was put expressly upon the ground that the provision for a jury in the United States bankrupt law modified the rule as to the proof of claims which had been applied under the English law.

In a more recent case in England, *Ex parte Bateman, in re Routledge,* 35 Eng. Law & Eq. 422, a demand for the value of certain timber which the debtor had agreed to saw and to keep insured, or to make good if burned, and which was burned, was disallowed by the commissioner, in accordance with what seems to have been the rule of English practice up to that time, 1856. But, upon appeal to the court of chancery, it was ordered that the petitioner be allowed to prove for the value of his timber destroyed by fire. The court, Turner, L. J., attempt to distinguish that from the case of *Green* v, *Bicknell,* because, before the bankruptcy, Bateman made out an account of the items of such timber, and Routledge admitted its accuracy, although he denied the agreement. The court say, (p. 428,) " In *Green* v. *Bicknell,* in the view taken by the court, all the questions of quantity, quality, customary allowance and market price were entirely open, those several ingredients having been found by the special case merely as facts, and not as facts agreed on before the bankruptcy; " " but in the present case I see nothing which can be open to dispute, except the mere question of value; and it is, I think, sufficiently proved that there is a market price governing the value of timber." This case (which is also reported, though with less fulness, in 8 De G., Macn. & Gord. 263) is important as showing that the line of exclusion is drawn by the English courts, not so much in regard to the essential nature of the demand as to the means through which it is to be substantiated and its amount determined. This being so, we have less difficulty in departing from the long established practice of those courts.

Regarding the purpose, therefore, of our statutes of insolvency as seeking to devest the debtor of all his estate and of all rights in the nature of property, and, on the other hand, to relieve him

from the pressure of obligations by which he is borne down, we are of opinion that, to give this purpose its full effect, the broadest construction should be put upon this section allowing proof of claims, that is compatible with the terms in which the legislature has expressed its intention in this particular. Certainly no narrow definition nor technical rules of pleading or proceeding should exclude a demand which is legal and absolute at the time of the insolvency.

By § 76 the debtor is to be discharged "from all debts provable under this chapter, and founded on any contract made by him subsequently" to the act of 1838; with limitations as to jurisdiction. In accordance with what seems to be the purpose of this clause, as well as of the whole system, we think that any liability of the debtor, "founded on any contract made by him," affecting pecuniary or property interests, may be proved against his estate, provided the demand or debt offered for proof had accrued to the claimant and become fixed, "absolutely due," at the time of the first publication of notice of the proceedings in insolvency.

This does not conflict with the decisions in *Bennett* v. *Bartlett*, 6 Cush. 225; *French* v. *Morse*, 2 Gray, 111; and *Morton* v. *Richards*, 13 Gray, 15. In those cases the demand had not accrued to the plaintiff, and was not due until after the proceedings in insolvency had been instituted; and the fact that those decisions were put exclusively and pointedly upon this ground is an implied recognition that the claims were, in their nature, provable.

With this view of the law, we think the judge of the court of insolvency rightly admitted the claim to proof, and therefore that the demurrer must be overruled and the

*Exceptions sustained.*