## Assigned Estate of W. K. Jones.

*Assignment for creditors—Distribution of fund—Who may participate.*

In the distribution of an assigned estate the rule is that those are entitled to share who have a definite demand against it or a cause of action capable of adjustment and liquidation upon trial.

In the case at bar the assignor was liable as surety on a bond; suit was brought three years before the assignment and resulted in determining the liability against the obligor to an amount in excess of the bond on which the surety was liable; the amount of the damages exceeded the amount of the bond, hence, the assignor's liability thereunder was the full amount thereof and attached as of its date.

Argued Nov. 16, 1899. Appeal, No. 10, Feb. T., 1900, by E. H. Ashcraft et al., creditors of the assigned estate, from

decree of C. P. Potter Co., June T., 1894, No. 22, confirming exceptions to auditor's report in distribution of the fund. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEAVER, J.

Exceptions to auditor's report distributing fund arising under the assigned estate of W. K. Jones. Before MORRISON, J.

It appears from the record that on February 28, 1890, F. H. & C. W. Goodyear purchased from William Dent a quantity of logs. There was some question about the title of these logs being in Dent. They were claimed by one G. W. Huntley. To protect themselves in the transaction the Goodyears required of and took from Dent as principal and W. K. Jones and H. J. Olmsted as sureties, a bond conditioned that if Dent shall defend the said F. H. & C. W. Goodyear in the title and in the quiet and peaceable possession of said logs, and indemnify the said second parties from all damages, by reason of, or arising from, any claims, demands, suits, costs or decrees, and shall pay all lawful costs, judgments, or recoveries that shall or may be finally had against the said F. H. & C. W. Goodyear, their agents, or employees or vendees, by reason of their taking and using said logs, and shall defend all suits or proceedings commenced or prosecuted against said F. H. & C. W. Goodyear, their agents, employees or vendees, by reason of the taking or holding of said logs, then this obligation to be null and void; otherwise to be and remain in full force and virtue.

This bond was never entered of record.

Trespass for alleged wrongful appropriation of the said logs was brought by Huntley against the Goodyears, and was decided in favor of the defendants. Plaintiff took an appeal and the Supreme Court reversed the court below and directed judgment in the following terms:

"The judgment of the court below is therefore reversed, and it is directed that the record be remitted to the court below, that an account may be taken, and plaintiff's damages be assessed according to law by the referee:" Huntley v. Goodyear, 182 Pa. 613.

On February 23, 1898, the referee, in pursuance of this order of the court, assessed the damages to the plaintiff in the sum

of $11,590.30, for which amount judgment was duly entered as of that date by the prothonotary against the defendants, F. H. & C. W. Goodyear.

On February 24, 1894, W. K. Jones, one of the two sureties on the aforementioned bond, having become insolvent, made an assignment for the benefit of his creditors to one W. I. Lewis. Two distributions of the funds in the hands of the assignee were made on partial accounts, and duly confirmed by the court. The third partial account came up on December 17, 1897, when A. R. Moore was appointed auditor to make distribution of funds in the hands of assignee, after which date an application was made for the first time by the Goodyears to participate on the part of the bond, to the amount of $10,000. They appeared before the auditor, and after giving evidence of the bond and the circumstances attending its creation, the facts and records of the action in trespass against them based on their title to the logs, the decision of the Supreme Court therein, the decision of the referee under the remittitur and the entry of judgment against them thereon for the sum of $11,590.30 by the prothonotary, and, finally, of facts going to show the insolvency of William Dent, the principal under the bond, they thereupon claimed distribution on the fund then before the auditor, and also on the two former funds.

The auditor reported on their claim as follows:

### CONCLUSIONS OF LAW.

1. That the $10,000 bond, on which the claim of F. H. & C. W. Goodyear was founded, was not at the date of assignment by W. K. Jones such an obligation as would support an action against the obligors.

2. That this bond was not an obligation, at the date of the assignment, due, or surely to become due, and therefore cannot participate in the funds in the hands of the assignee.

The auditor reported that the general creditors, among them the appellants in this case, would receive seven per cent of their claims, but refused to allow the Goodyears to participate in the fund.

To this report of the auditor the Goodyears took exceptions, which were sustained by the court, MORRISON, J., who ordered

that distribution be made to the Goodyears on the bond as claimed by them.

E. H. Ashcraft et al., creditors of the assigned estate of W. K. Jones, appealed.

*Errors assigned* among others were (4) in decreeing as follows: " We think these exceptions must be sustained. Said exceptions referred to by the court being as follows : 1. The auditor erred in not allowing the claim of the said F. H. & C. W. Goodyear to participate in the present fund and allow them their percentage on the full amount of the bond. 2. The auditor erred in not allowing said claimants their proportionate share of the two previous funds, based on the full amount of the bond. 3. The said auditor erred in distributing F. H. & C. W. Goodyear's proportionate share of the present fund to the other creditors of the said W. K. Jones." (5) In ordering as follows : " The report should be referred back to the learned auditor with instructions to recognize the claim of F. H. & C. W. Goodyear to the full amount of the $10,000 bond and to make distribution to them accordingly." (6) In finding as follows : " That the liability of W. K. Jones upon the bond of February 28, 1890, was fixed at the date the bond was delivered."

*A. N. Crandall* and *J. Newton Peck*, of *Peck & Stone*, for appellant.—It is the general rule of law, that when an assignment is made for the benefit of creditors, the rights of the creditors are fixed as of the date of the assignment: Miller's Appeal, 35 Pa. 481; Jordan's Appeal, 107 Pa. 75; Weinmann's Estate, 164 Pa. 405 ; Potter v. Gilbert, 177 Pa. 159.

Damages arising from breach of contract subsequently to an assignment for the benefit of creditors, whether that assignment be voluntary or be made in the course of bankruptcy or insolvency proceedings, are not provable : Yallop v. Ebers, 1 Barn. & Ad. 698.

Similarly a landlord is not entitled to prove in bankruptcy or insolvency proceedings or under an assignment for rent accruing subsequent to the assignment: Bosler v. Kuhn, 8 W. & S. 183 ; Prentiss v. Kingsley, 10 Pa. 120 ; In re Reading Iron Works, 150 Pa. 369 ; Weinmann's Estate, 164 Pa. 405.

Likewise, the indorser of a promissory note cannot prove on it against the estate of the maker when the default occurred

subsequently to the assignment, and the latter will still be liable on it after his discharge: Frost v. Carter, 1 Johns. Cas. (N. Y.) 74; Brough's Estate, 71 Pa. 460.

Vice versa, the holder of a promissory note, under similar circumstances cannot prove it against the estate of an insolvent indorser: Mechanics' & Farmers' Bank v. Capron, 15 Johns. Cas. (N. Y.) 467.

For the same reason, a claim for damages arising from the breach of a bond cannot be proved against the estate of an insolvent surety, when the breach occurred subsequent to the assignment: Loring v. Kendall, 67 Mass. 305.

*M. E. Olmsted* and *H. C. Dornan*, with them *W. B. Brightman*, for appellee.—In the distribution of a fund the general rule undoubtedly is that those only are entitled to share who have a definite demand against it, or a cause of action capable of adjustment and liquidation upon trial. Id certum est quod certum reddi potest: Reading Iron Works, 150 Pa. 369.

The question of the character of the indebtedness payable under an assignment for benefit of creditors was first discussed in Pennsylvania in the case of The Bank of Pennsylvania v. McCalmont, 4 Rawle, 307.

In the case at bar the parties to the bond given to Goodyears contracted the debt the very instant they signed the bond. And this indebtedness under the bond is just the same as the indebtedness would have been if judgment had been entered on the bond at the time the bond was given. As stated by the court below, "we cannot agree with the doctrine that a man can make a bond of the character of the one given by Dent, with Jones and Olmsted as sureties, and then relieve his estate from all liability thereon by making an assignment for the benefit of creditors:" Smith's Appeal, 74 Pa. 191; Oyster v. Short, 177 Pa. 601.

The appellants cite in their paper-book several cases outside of Pennsylvania upon this subject, and an examination shows that there has been a variety of decisions upon the question in the different states, some holding one way, and some the other. But without going into these variances in detail, we prefer to confine our argument, so far as cases are concerned, to those of our own state.

In the case at bar the indebtedness did undoubtedly exist before the assignment: Reading Iron Works, 150 Pa. 369.

OPINION BY BEAVER, J., January 17, 1900:

The several questions presented by this appeal arise out of the distribution of a fund in the hands of the assignee of W. K. Jones under a general assignment made February 24, 1894, in trust for the benefit of creditors.   Prior to the date of said assignment, to wit: on the 28th of February, 1890, one, William Dent, as principal, and W. K. Jones, the assignor, and H. J. Olmsted, as sureties, entered into a bond to F. H. & C. W. Goodyear in the sum of $10,000, conditioned to make good the title to certain hemlock logs sold by the said Dent to the said F. H. & C. W. Goodyear, one of the recitals in said bond being that " the said Dent has agreed to guarantee a good title to the said logs and to indemnify the said F. H. & C. W. Goodyear from any claim, damage, suit, decree or expenses whatsoever which shall be suffered by them by reason of their taking said logs."   Subsequently in a suit by one Huntley against the said Goodyears, decided by Supreme Court in 182 Pa. 613, it was determined that Huntley " had a clear title and right to possession of the logs in dispute in this issue, " which, it is admitted, were those sold by Dent to the Goodyears.   The damages in that case were subsequently assessed by the referee at $11,590, being an amount greater than the penalty of the bond given by Dent and his sureties to the Goodyears.   Upon the final distribution of the assigned estate of Jones in the hands of the assignee, claim was made by the Goodyears (Dent being insolvent) upon the fund for their distributive share upon the amount of said bond.   The auditor disallowed their claim but, upon exceptions to the report and argument in the court below, the claim was allowed, the report referred back to the auditor for amendment and distribution made accordingly.   The confirmation absolute of this amended report is the ground work of the present appeal, two questions being raised thereby, the first as to the matter, and the second as to the manner of the decree.   It is claimed by the appellants that the legal rights of the creditors of Jones were fixed by the assignment in 1894, and that, inasmuch as the bond upon which Jones was surety, given by Dent to the Goodyears, was at the most a contingent

liability, the amount of said liability not having been fixed and determined until four years after the date of the assignment, the holders of the bond are not entitled to participate in the distribution of Jones's assigned estate. This is the principal question and is fairly and regularly raised by the appeal from the decree of the court confirming the amended report of, the auditor.

What was the character of Jones's liability under the provisions of the bond, and when did his liability become fixed? Dent's undertaking under the bond was "to guarantee a good title to the said logs and to indemnify the said F. H. & C. W. Goodyear from any claim, damage, suit, decree, cost or expenses whatsoever which shall be suffered by them by reason of their taking said logs." It is ingeniously argued by the appellants that this undertaking was by an agreement verbal or otherwise previously made, but it is evident from the nature as well as from the wording of the bond that the writing constitutes the agreement as fully as if the words "hereby agrees" had been added. If Dent had no title to the logs, as was eventually determined by the final judgment of the Supreme Court, the liability under the bond was instant. Suit against the Goodyears for the recovery of the logs was brought in 1891 and, although not finally determined until 1897, the rights of the parties were fixed as of the date of the suit, if not as of the date of the bond. In Reading Iron Works' Estate, Sweatman's Appeal, 150 Pa. 369, the company became insolvent and made an assignment for the benefit of creditors in May, 1889. The premises occupied by them were vacated on July 31, 1889, to which time rent was actually paid. A considerable portion of their lease, however, was unexpired and it was claimed by the owner of the property that he was entitled to share in the distribution of the assigned estate, not for rent unpaid but for damage sustained by him by reason of the failure of the iron works to comply with the terms of their lease, and it was in reference to these facts that Mr. Justice WILLIAMS, in his opinion, said: " The present value of the loss to be sustained for the remainder of the term may be ascertained and the damages liquidated. This the auditor has done. For these damages the lessor has a present cause of action (Lothrop v. Reed, 95 Mass. 294), and for that reason, a right to share in the fund. That damage is not for rent

eo nomine, for under the agreement the lessor has rented the premises to others. It is for the loss he suffers by reason of the difference of the rentals now obtainable in consequence of the peculiar arrangement and construction of the premises and the rental agreed upon as an inducement to him to make the investment for the use of the company." The owner of the premises was, therefore, allowed to share in the distribution of the assigned estate.

If that is certain which is capable of being rendered certain, then it is true in this case, as in the one above quoted, that "in the distribution of a fund the general rule undoubtedly is that those are entitled to share who have a definite demand against it or a cause of action capable of adjustment and liquidation upon trial." In this case, suit against the Goodyears for the logs had been brought three years before Jones's assignment. The final issue of that suit, as already intimated, determined the title as in Huntley, and, therefore, as never having been in Dent. The amount of the damages exceeded the amount of the bond, and hence Jones's liability under the bond was the full amount thereof and attached as of its date. Oyster v. Short, 177 Pa. 601, recognized the right of a creditor to participate in the distribution of an assigned estate for the amount of notes maturing after the assignment upon which the assignor was indorser. In a sense the liability was contingent, that is, if the maker paid the notes the indorser would not be liable, and that would be the case here as between Dent, the maker of the bond, and Jones, the surety; but, in both cases, there was liability which was capable of being rendered certain as of the time when the obligation was entered into. We can see no difference in principle between this case and the one which we are now considering. Jones's obligation to the Goodyears, therefore, was fixed as of the date of the bond, although the amount of the liability was to be determined thereafter.

The question as to the manner in which the decree of the court was finally entered is purely technical. There is no allegation that the auditor's report, as originally made to the court, was not in all respects regular. All parties presumably were heard upon the exceptions filed thereto. The court sustained the exceptions and merely referred the report back to the auditor for correction. It does not seem to us that notice of the

refiling was necessary, but in any event the appellants are not harmed, inasmuch as the court allowed an exception to the decree confirming the report absolutely, which brings up the entire record, and the questions raised therein, as covered by the several assignments of error, have been considered by us upon their merits.

This sufficiently disposes of all the questions involved, and, as we see no error, the assignments are all overruled and the decree affirmed.