### JOHN AND JAMES TUCKER v. OXLEY, AS-SIGNEE OF T. MOORE, A BANKRUPT.

———

Under the
bankrupt law
of the United
States a *joint*
ERROR to the circuit court of the district of Columbia, sitting at Alexandria, in an action of *assump-sit* for goods sold and delivered, brought by Oxley,

assignee of Thomas Moore, a bankrupt, against the plaintiffs in error. Upon the general issue, the jury found a verdict for the plaintiff below for 143 dollars and 33 cents, subject to the opinion of the court upon the following case:

Thomas Moore, the bankrupt, carried on the trade and business of a vendue master in copartnership with one Henry Moore, which copartnership was on the 31st of March, 1802, dissolved on the terms that Thomas Moore should collect the balances due to, and pay the debts due from the joint concern as far as the joint property would extend. Thomas Moore carried on the trade and business of a vendue master on his separate account from that time until the 2d of September following, when he became bankrupt, and a commission being duly awarded and issued against him, he was duly declared a bankrupt according to the laws of the United States then in force concerning bankrupts; under which the plaintiff was duly appointed assignee.

While Henry and Thomas Moore carried on the business of vendue master in partnership, they became jointly indebted to the defendants, John and James Tucker, in the sum of 106 dollars and 49 cents, being the balance of account due to the defendants, for their goods sold by H. and T. Moore, at vendue. After the dissolution of the partnership, and while Thomas Moore carried on business on his separate account, the defendants, the Tuckers, at different times, from the 19th of April to the 22d of July, 1802, knowing that the partnership was dissolved, and that Thomas Moore carried on business on his separate account, purchased of him at vendue, goods to the amount of 113 dollars and 12 cents, which goods were charged to the defendants, the Tuckers, in the separate books of Thomas Moore, without credit being given to the defendants for the joint debt due to them from Henry and Thomas Moore. Thomas Moore being examined as a witness, proved that he intended, at the time of selling the goods to the defendants, to give them credit for the joint debt due to them from Henry

TUCKERS
v.
OXLEY.

debt may be set off against the *separate* claim of the assignee of *one* of the partners. But such offset could not have been made, at law, independent of the bankrupt law.

A joint debt may be proved under a separate commission, and a full dividend received. It is equity alone which can restrain the joint creditor from receiving his full dividend until the joint effects are exhausted.

and Thomas Moore, but nothing was said or agreed on the subject, between him and the defendants, nor was any such credit ever given before his bankruptcy. This action is brought for the price of the goods so sold and delivered by Thomas Moore in his separate capacity. If the court should be of opinion, upon the case stated, that the defendants are entitled to have the joint debt due to them by Henry and Thomas Moore deducted from the sum claimed in this action, the verdict was to be reduced to 16 dollars and 63 cents, and judgment to be entered accordingly.

The opinion of the court below being, that the joint debt could not be set off against the separate claim of the bankrupt, judgment was rendered for the plaintiff for the larger sum; whereupon the defendants brought a writ of error.

C. Simms, for the plaintiff in error.

All contracts with partners are joint and several; and every partner is liable to pay the whole. In what proportion the others are to contribute is a matter merely among themselves. The plaintiff may bring his action at law against any one of the partners, and can only be compelled by plea in abatement to join them all. 5 Burr. 2613. 1 Esp. 117.

By the 42d section of the bankrupt law, (vol. 5. p. 74.) it is declared, that where there hath been mutual credit given by the bankrupt and any other person, or mutual debts between them, the assignee shall state the account between them, and one debt shall be set off against the other, and the balance of such account, after such set-off, and no more, shall be claimed or paid on either side respectively.

Lord Chancellor Hardwicke, in Edwards's case, 1 Atk. 100. doubted whether, under the statute relating to mutual debts, a debt due from A. to B. could be set off against a debt due from B. to A. and C. In that case C. was not in any manner liable to B. for the debt due from A. to B.

But in the present case, Thomas Moore was liable to the Tuckers for the debt due to them from *Henry* and Thomas Moore, and the Tuckers might have compelled payment from Thomas alone.

The clause in the act of parliament, *5 Geo.* II. relating to mutual credits, and which is the same as the 42d section of our bankrupt law, has received a very liberal construction. 1 *Atk.* 228. *Ex parte Deeze.* 1 *Atk.* 230. *Ex parte Charles Prescot.*

By the 34th section of the bankrupt law it appears that a partnership debt may be proved on a separate commission against one of the partners. By that section it is declared, that the "bankrupt shall be discharged from all debts by him due or owing at the time he became bankrupt, and all which were or might have been proved under the commission;" with this *proviso*, " that no such discharge of a bankrupt shall release or discharge any person *who was a partner* with such bankrupt, at the time he became bankrupt, *or who was then jointly held or bound* with such bankrupt, for the same debt or debts from which such bankrupt was discharged as aforesaid."

And it may be laid down as a general rule, that a debtor of a bankrupt may be allowed to set off any debt due from the bankrupt which he could have proved under the commission. *Coop. B. L.* 247.

*Jones,* contra.

The debt for which this action was brought against the Tuckers, was contracted long after the dissolution of the partnership of Henry and Thomas Moore. It was, and yet stands, charged against them on the separate books of Thomas Moore.

It is neither a mutual debt, nor a mutual credit. They are claims in different rights

It is a general principle, in cases of bankruptcy, that the joint funds are to be applied to the discharge of the joint debts, and the separate funds to the dis-

charge of the separate debts. The separate creditors can only come upon the joint fund for their debtor's share of the surplus, after paying the joint creditors; and the joint creditors can only come upon the separate fund for the surplus, after payment of the separate creditors.

A joint creditor can only prove under the separate commission for the chance of that surplus, and to assent to or dissent from the allowance of the certificate. *Cooke's B. L.* (4th edit.) 237. 244. 250. 3 *Vez.* jun. 238. *Ex parte Elton.* 4 *Vez.* jun. 837. *Ex parte Abell.*

There is no statute in Virginia which authorizes set-off. The question depends entirely upon the 42d *section* of the bankrupt law of the United States, which is precisely like the 28th *section* of the act of parliament of 5 *Geo.* II. *c.* 30. *Cooke's B. L.* 541. 544.

It is clear that the separate creditors cannot come upon the joint fund until all the joint creditors are paid; it is unreasonable that the joint creditors should take the whole separate estate without looking at all to the joint estate. In the present case it is not stated that the joint funds were exhausted. It does not appear but that the other partner is solvent. The assignee of Thomas Moore cannot collect the debts due to Thomas and Henry Moore, and it is inequitable that he should be obliged to pay their debts.

In order to be set off under the bankrupt law, it must be a *plain mutual credit. Cooke's B. L.* 568. If due in different rights, it cannot be set off. A separate claim against one partner cannot be set off against a joint demand. 1 *Wash.* 77. *Scott* v. *Trent.*

*Simms,* in reply.

The defendants below might have proved their debt under the commission against Thomas Moore.

The 34th section of the bankrupt law provides,

that a discharge under a commission against one TUCKERS
partner shall not discharge the other partner; which v.
provision would be wholly unnecessary, if a joint OXLEY.
debt could not be proved under that commission.

It is true that there is no statute in Virginia au-
thorizing set-off; but under the equity of the statute
respecting the action of debt by the assignees of
promissory notes and bonds, set-off has been allowed
in that state.

But the assignee of T. Moore, if he had an equi-
table right to the joint debts, might bring an action
in the joint name, and a court of law would protect
his equity.

LIVINGSTON, J. I do not recollect any particu-
lar authority, but I have always considered it as one
of the clearest principles of law, that a joint debt can-
not, at law, be set off against a separate claim

### February 15

MARSHALL, Ch. J. delivered the opinion of the
court, as follows :

In this case the plaintiffs in error, who were de-
fendants in the circuit court, claimed to set off against
a debt due from them to Thomas Moore, the bank-
rupt, a debt previously due to them from the firm of
H. and T. Moore, which firm was dissolved, and the
partnership fund had passed to T. Moore. This
offset was not allowed; and its rejection is the error
alleged in the proceedings of the circuit court.

At law, independent of the statute of bankruptcy,
the court is of opinion that this discount could not
have been made in a suit instituted by Thomas
Moore against the Tuckers ; and if the words of the
act of congress allowing set-off in the case of mu-
tual debts and credits were to be expounded with-
out regard to the provisions of that act in other re-
spects, it is probable that they would not be extended
beyond that technical operation, to which has been

allowed the term " mutual debts," in ordinary cases: But the bankrupt law changes essentially the relative situation of the parties; and the provisions making that change are thought, by a majority of the court, to have a material influence on the words of the 42d section of the act, which provide for the case of mutual debts and credits.

It is the opinion of the court that this is a debt, which might have been proved under the 6th section of the act. It is a debt, which, by a suit against both the partners, might have been recovered against either of them, and either might have been compelled to pay the whole. Although due from the company, yet it is also due from each member of the company; and the claim of the creditor for its satisfaction extended, previous to the act of bankruptcy, to the whole property of each member of the firm, as well as to the joint property of the firm. It would be certainly impairing that claim to apply, by the operation of law, the whole particular fund to other creditors, who, at the time of the bankruptcy, had not a better legal claim on that fund than the Tuckers, without allowing them to participate in it. The court, therefore, would be much inclined to consider the creditors of the partnership as having a right, under the general description of creditors of the bankrupt, to prove their debts before the commissioners. But all doubt on this subject seems to be removed by the *proviso* to the 34th section. That section declares, that the bankrupt shall be discharged from all debts which were due from him at the date of the bankruptcy, and all which were or might have been proved under the said commission, " Provided that no such discharge of a bankrupt shall release or discharge any person, who was a partner with such bankrupt at the time he or she became bankrupt, or who was then jointly held or bound with such bankrupt for the same debt or debts, from which such bankrupt was discharged as aforesaid."

Thomas Moore, then, is discharged from the debt due from Henry and Thomas Moore to the Tuckers; and if he is discharged therefrom, it would seem to

be an infraction of their pre-existing rights not to allow them a share of his property. It is deemed by the court material in the construction of this statute, that, as the proviso shows the joint creditors to be within the description of the terms creditors of the bankrupt, so as to enable them to prove their debts under the commission, they are of necessity comprehended within the same terms in those sections which direct to whom the dividends are to be made. The words of the 29th and 30th sections are imperative. They command the commissioners to divide the estate of the bankrupt among such of his creditors as shall have made due proof of their debts, in proportion to the amount of their claims. Consequently, every creditor who proves his debt is entitled to a dividend.

But, although the creditors of H. and T. Moore might have proved their debt before the commissioners, and have received a dividend out of the estate of the bankrupt, it may be contended that, having failed to do so, they are not entitled to set off their whole claim.

The 42d section of the act directs, that where it shall appear to the commissioners that there hath been mutual credit given by the bankrupt and any other person, or mutual debts between them at any time before such person became bankrupt, the assignee or assignees of the estate shall state the account between them, and one debt may be set off against the other; and what shall appear to be due on either side, on the balance of such account, after such set-off, and no more, shall be claimed or paid on either side respectively.

The term "debt," as used in this section, is fairly to be construed to mean any debt for which the act provides. A debt which may be proved before the commissioners, and to the owner of which a dividend must be paid, is a debt in the sense of the term as used in this section.

Tuckers
v.
Oxley.

Were this doubtful, it cannot be denied that the advantage given by the section is reciprocal, and in any case where the set-off would be allowed, if the balance was against the bankrupt, it must be allowed if in his favour. It has already been stated that the Tuckers might have proved their claim before the commissioners. Can it be doubted that the whole of the debt due to the bankrupt would, under this section, have been deducted from that claim? We think it cannot be doubted. Then, the terms applying alike to each party, the debt due to the Tuckers must be set off from that which they owe the bankrupt.

If the " assignee of the estate ought to have stated the account," and have only claimed the balance, his omitting so to do cannot enlarge his rights; he can only recover what he ought to have claimed.

This, which seems to be the naked law of the case, is not unreasonable. It is fair to conclude that the Tuckers forbore to recover the money due to them from H. and T. Moore, in consideration of their dealings with T. Moore, after he traded on his separate account.

This exposition of the bankrupt act appears to the court to conform to that which is given in England. As the bankrupt law of the United States, so far as respects this case, is almost, if not completely, copied from that of England, the decisions which have been made on that law by the English judges may be considered as having been adopted with the text they expounded.

In England, it has never been doubted that a man, having a claim on two persons, might become a petitioning creditor for the bankruptcy of one of them. Such petitioning creditor has always been admitted to prove his debt before the commissioners, and to receive his dividends, in proportion, with the other creditors. He is, then, in contemplation of the act, a creditor of the bankrupt; and, consequently, all the

provisions of the act apply to him, as to other credit-
ors. This would seem to prove that, under the le-
gal operation of the act, a creditor of a firm, of
which the bankrupt was one, and a creditor of the
bankrupt singly, were equally creditors of the bank-
rupt, in contemplation of the law, and were construed
to come equally within the meaning of the term, as
used in the act. If this position be correct, the rules
which we find laid down by the chancellor, for
marshalling the respective funds, are to be consider-
ed merely as equitable restraints on the legal rights
of parties, obliging them to exercise those rights in
such manner as not to do injustice to others. This
is the peculiar province of a court of chancery. It
is the same, in principle, with the common case of
marshalling assets, where specialty creditors, who
have a right to satisfaction out of lands, exhaust the
personal estate, to the injury of simple contract
creditors.

It is undoubtedly unjust that the Tuckers, having a
claim on H. and T. Moore, and being able to obtain
payment from H. Moore, should satisfy that claim
entirely out of the separate estate of T. Moore, to
the exclusion of other creditors, who had no resort
to Henry; and it is probable that a court of chancery
might restrain this use of his legal rights within
equitable limits. But suppose H. Moore, also, to
be a bankrupt; or to be insolvent, and unable to pay
the debt; would it not be equally unjust to apply
the estate of each individual to the discharge of the
several debts, to the entire exclusion of their joint
creditors, who, previous to their bankruptcy, had a
legal and equitable right to satisfaction out of the
separate estate of each?

Mr. Cooke has made a very good collection of the
decisions in England, on this question. It will be
found that a creditor of the partnership was first
permitted by consent to prove his debt before the
commissioners of the individual bankrupt, and to
receive dividends from the separate fund. It was
afterwards decided by the chancellor that he had a right

so to do : and in conformity with this decision was the regular course of the court, until the year 1796. During this time, however, the chancellor, sitting, as chancellor, on a bill suggesting equitable considerations for restraining the order he had made, was accustomed to enjoin the dividends which he had ordered, sitting in bankruptcy. This would seem to prove that, at law, the creditor of the partnership had a right to his dividends from the separate fund, but that equity would compel him first to exhaust the joint fund.

In 1796, this whole subject was reviewed in the case *Ex parte Elton*, reported in 3 *Ves.* jun. This case has been considered as overruling former decisions ; but, in the opinion of the court, it confirms the principle already stated. After stating his objection to the prevailing practice, because each order carried in its bosom a suit in chancery, the chancellor took time to consider the subject; and finally determined that the petitioner should be permitted to prove his debt, and that his dividend should be set apart, but not paid to him until an account should be taken of the joint fund.

It is perfectly clear that, in this case, the chancellor, for convenience, exercised, at the same time, his common law and equitable jurisdiction. In conformity with the uniform exposition of the act, he permitted the partnership creditor to prove his debt before the commissioners of the bankrupt, and directed the dividend to be allotted to him out of the separate fund; and then, without the expense of a bill, exercising his equitable powers, he suspended the payment of this dividend, until it should be ascertained how much of it a court of equity would permit the creditor to receive. This does not negative, but affirms, the legal right of a partnership creditor to come on the separate fund.

It appears also to be admitted, that if the particular creditors should be satisfied without exhausting the fund, the residue might be paid to the partner-

slip creditors. This seems to admit the legal right of those creditors to prove their debts, and to receive their dividends. It is equity, not law, which can postpone them.

It is the opinion of a majority of the court, that the circuit court erred in rendering a judgment on this special verdict for the sum of 143 dollars and 33 cents, instead of the sum of 16 dollars and 63 cents; which was the balance after deducting the debt due from H. and T. Moore to the defendants in that court. It is therefore considered by the court, that the said judgment be reversed and annulled; and the judgment be rendered for the plaintiffs in the ciruit court for the sum of 16 dollars and 63 cents, and the costs in the circuit court.

Judgment reversed.