Robert R. Hume, New York City (Hart, Hume & Engelman, New York City, on the brief) (Henry James Wallach, New York City, of counsel), for appellee.

In the Matter of SHERMAN PLASTERING CORPORATION, Debtor.

Sherman Plastering Corporation, Appellant,

The Hanover Insurance Company, Appellee.

No. 300, Docket 29269.

United States Court of Appeals Second Circuit.

Argued Jan. 20, 1965.

Decided May 26, 1965.

Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This appeal, like that reported at 340 F.2d 915 (2 Cir. 1965), involves the Chapter XI arrangement of Sherman Plastering Corporation [Sherman]. Unlike the other appeal, however, our concern is with section 68 [1] of the Bankruptcy Act, which allows set-offs against a bankrupt by one of its debtors on condition that the debts are mutual.

1. 11 U.S.C. § 108: "a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid. "b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy."

On March 15, 1963 Sherman filed a petition for arrangement; and was thereafter permitted to operate its business as a debtor-in-possession. Several years prior to filing its petition, Sherman was engaged as a subcontractor by a Joseph Rugo, a prime contractor, in the construction of an office building for the State of Maine. Sherman had faithfully performed its duties and, when Rugo defaulted in payment, Sherman turned to the bond furnished by Rugo. This bond was executed in 1956 by three corporate sureties, Massachusetts Bonding & Insurance Co. [Mass. Bonding], United States Fidelity & Guaranty Co. [Fidelity], and American Automobile Insurance Co. [American]. The bond bound the sureties " 'jointly and severally' as well as 'severally' "; and it obliged Mass. Bonding to pay 50 per cent of the penal amount and the other two sureties to pay 25 per cent each. In 1957 Sherman commenced an action on the bond in the name of the State Treasurer; and on February 24, 1964, a judgment of $39,943.15 plus interest was entered in its favor, to be affirmed on appeal on January 11, 1965 save for the method of computing the interest. The sureties were explicitly held jointly liable (a point much stressed by appellant although we can perceive no difference here relevant between a joint and several liability). Sherman could collect up to the whole judgment from any one or more of the obligors; and to the extent that this exceeded any obligor's pro rata share, that obligor would have to seek reimbursement from the others. 4 Corbin, Contracts, § 928 (1951).

The sureties consented to the jurisdiction of the bankruptcy court and sought to satisfy their obligations arising from the Maine judgment. Fidelity and American tendered to the bankrupt-Sherman their pro rata shares of the judgment, and Hanover Insurance Co. [Hanover], which had succeeded to Mass. Bonding during the pendency of the Maine action, sought to discharge its pro rata share by offsetting it by an unrelated indemnification claim when it filed its proof of that claim on February 24, 1964. This claim arose from Sherman's contractual duty to reimburse Hanover for payments made under another performance bond issued in 1960, according to which Hanover acted as surety for Sherman in another construction job.

Sherman resisted, and refused the tenders for obvious reasons. Its strategy was to collect the full amount of the Maine judgment from American and Fidelity, with the hope of destroying Hanover's set-off, thereby enabling it to pay off Hanover's claim at the scaled down rate fixed in the Chapter XI arrangement and yet to satisfy its claim under the Maine judgment in full. It sought to justify this position by invoking the maxim that a joint debt (the debt owed by Hanover) cannot be set off by a single debt (the debt owned by Hanover), and by insisting that this maxim was embodied in the mutuality-of-debts requirement of section 68 of Bankruptcy Act.

At the outset of this proceeding, the Referee in Bankruptcy enjoined Sherman from executing and enforcing the Maine judgment; but he vacated this injunction after reaching the merits of Hanover's petition and deciding to disallow the set-off for want of the requisite mutuality. On a petition for review, Judge Palmieri allowed the set-off and we affirm his order modifying the Referee's disposition.

No legitimate interest would be served by disallowing this set-off, and in fact disallowing the set-off would frustrate the manifest equitable purposes of section 68. It would put Hanover in the inequitable position of having to pay its debt to Sherman in full while receiving only partial satisfaction of its claim against Sherman. Neither the rehabilitative purposes of a Chapter XI arrangement nor section 68's requirement that the debts be mutual dictates such a result. The debts are owed and owned by the same party, acting in the same capacity. The jointness of the debt owed by Hanover affords Sherman the alterna-

tive of collecting the whole amount from the other joint obligors. However, the availability of this alternative, conceived of as a means of protecting the obligee from certain contingencies, none of which materialized in this case, such as the insolvency or lack of amenability to suit of the other joint obligors, does not mean that Hanover does not owe its agreed upon share of the joint debt, or that it owes it in a different capacity than it owns its debt against Sherman. There was equity in preventing Sherman from pursuing the course it sought to follow; and although there is no need to decide what would occur if Sherman sought to execute the whole judgment against American and Fidelity, its initial premise that this would destroy Hanover's set-off, that American and Fidelity could not use the debt owned by Hanover as a set-off, is not entirely free from doubt. Arguably, in that situation, American and Fidelity could assert the debt owed to Hanover alone on the theory that in paying Hanover's share of the indebtedness they would in effect be acting as Hanover's surety, see 4 Corbin, Contracts, p. 717 (1951), entitled to seek reimbursement and similarly entitled, under certain circumstances, such as when the principal consents, to set-off claims belonging to the principal alone, see Restatement, Security, § 133(2); Simpson, Suretyship, pp. 319–326 (1952); 3 Story, Equity Jurisprudence, p. 477 (14th ed. 1918).

In Gray v. Rollo, 85 U.S. (18 Wall.) 629, 21 L.Ed. 927 (1873), the Supreme Court acknowledged the equitable purpose of the set-off provision of the bankruptcy law, and established that set-off would be allowed under that provision where equity would permit it. The Court expressed a willingness to consider the mutuality-of-debts requirement of that provision in such a light as to prevent it from ever becoming a barrier to a set-off where "the justice of the particular case requires * * * [a set-off], and * * * injustice would result from refusing it," id. at 633. But in Gray v. Rollo the Court failed to find

any "rule of justice or equity" urging the allowance of the set-off, and accordingly disallowed it on the following facts. A partnership (Gray Bros.) had a claim against the bankrupt (an insurance company) and one of the two partners (Moses Gray) sought to set off this claim against one half of a debt owed jointly (or jointly and severally) to the bankrupt by him and a third party (Gaylord), based on notes executed jointly by the two. The Court reasoned that even if the debt owed to the bankrupt was viewed as being owed by Moses Gray alone, the fact that the debt owed by the bankrupt was owned by the partnership would preclude the set-off; if the partner did not consent, it would be obviously inequitable to have the assets of the partnership, "the joint fund," used to satisfy the separate debt of one of the partners; and even if the other partner did consent, the inequity would remain. Creditors of the partnership would have their rights impaired, and the bankrupt would have "no reciprocal right to do the same thing," that is, if Moses Gray rather than the insurance company were bankrupt, the insurance company could not seek to discharge its obligation to the partnership by setting off the debt owed by Moses Gray.

There is, in contrast to Gray v. Rollo, no inequity in allowing the set-off in the instant case. Neither Hanover's joint obligors nor its creditors could be prejudiced by the set-off. Nor would the joint obligors be receiving an unfair benefit, for if the set-off is allowed they would be paying no less than their pro rata share of the joint liability; and there is nothing unfair about saving them the expense, or foregoing the risk that would be involved in seeking reimbursement from Hanover if they were obliged to pay more than their pro rata share of the joint liability. Moreover, Sherman would have the "reciprocal right to do the same thing," that is, if Hanover rather than Sherman were bankrupt Sherman could apply Hanover's pro rata share of liability under the Maine judgment to discharge its

obligation to Hanover. In re Neaderthal, 225 F. 38 (2 Cir.), cert. denied, 238 U.S. 635, 35 S.Ct. 939, 59 L.Ed. 1499 (1915), need not be read as requiring the disallowance of the set-off in this hypothetical thought to be the "reciprocal" of the instant case, but to the extent that it is so read, we choose not to follow it.

(a). The partnership aspect of Neaderthal. Viewed in one light, Neaderthal deals with the problem of a set-off in the context of law of partnership, not at all involved in our case. Neaderthal could be read for the proposition that a creditor of a bankrupt and assetless partnership cannot discharge its obligation owed to one of the partners individually, also bankrupt and otherwise without assets, by setting-off the debt owed to the creditor by the partnership. Such a set-off would be unfair to the individual creditors of the bankrupt partner under the rule of distribution providing that the individual creditors, as opposed to partnership creditors, should have first claim on the bankrupt partner's individual estate, Story, Partnership §§ 376, 377 (7th Ed. 1881); Crane, Partnership § 94 (1952); Uniform Partnership Act § 40(i). This rule of distribution is embodied in the present bankruptcy law, section 5, sub. g, 11 U.S.C. § 23, sub. g, and it was part of the Bankruptcy Act of 1898, section 5, sub. f, 30 Stat. 544, 548, under which Neaderthal was decided. See generally, Shroder, Distribution of Assets of Bankrupt Partnerships and Partners, 18 Harv.L.Rev. 495 (1905). But it was not part of the Bankruptcy Act of 1800, 2 Stat. 16, under which Tucker v. Oxley, 9 U.S. (5 Cranch) 34, 3 L.Ed. 29 (1809), was decided, see Hitchcock v. Rollo, 12 Fed.Cas. pp. 237, 238 (No. 6,536) (Cir.Ct.N.D.Ill.1872); and although Chief Justice Marshall, writing for the Court in Tucker v. Ox-

ley, appeared willing to accept on a nonstatutory basis one facet of this rule of distribution, he apparently did not accept the whole rule. He acknowledged that partnership creditors must "first * * * exhaust the joint fund" (the estate of the bankrupt partnership) before any "dividend" should be paid to them out of "the separate fund" (the individual estate of the bankrupt partner), but he apparently did not see the individual creditor as having any priority over the partnership creditors vis-a-vis the individual estate once the partnership estate had been exhausted.[2] See In re Wilcox, 94 F. 84, 92–94, 103–104 (Dist.Ct.D.Mass.1899) (Lowell, J.). Thus, according to this view, once the partnership estate had been exhausted, the partnership creditors and the individual creditors would be on equal footing in terms of their claims on individual estate of the bankrupt partner, and there would be no unfairness in allowing the partnership creditor to discharge its debt owed to the bankrupt partner in his individual capacity by setting off the unsatisfied debt owed by the bankrupt partnership, even if the bankrupt partner's claim were his only asset. And the Court in Tucker v. Oxley so held.

(b). The endorsement aspect of Neaderthal. Our immediate concern with Neaderthal stems from the fact that of the $12,000 owed by the bankrupt partnership, $8000 was derived from a note made by the partnership and endorsed by both the partners acting in their individual capacities. The Court in Neaderthal considered this fact, but briskly concluded that it "does not alter the situation." But we find it difficult to understand why the endorsement would not alter the situation.

The Court in Neaderthal, in order to justify the disallowance of the set-off,

---

2. It is impossible to determine from the opinion whether the Court was influenced by the apparent fact that shortly before the bankruptcy of the partner against whom the set-off was allowed (Thomas Moore), the bankrupt partnership was "dissolved, on the terms that Thomas Moore should collect the balance due to, and pay the debts from, the joint concern, so far as the joint property would extend," and that Thomas Moore continued to operate the business formerly operated by the partnership, 9 U.S. at 35, 42.

might have reasoned that, in spite of the endorsement and the default of the maker, the obligation derived from the note remained nothing more than a partnership debt, leaving the rule of distribution between individual and partnership creditors discussed above applicable. This line of reasoning would seem more than questionable, for it appears firmly established that if partners endorse a note in their individual capacities, and the partnership (the maker) defaults on the note, the partners are personally liable, jointly and severally for the amount of the note, i. e., the partnership creditor can look to the individual estates of the bankrupt partners not only qua unsatisfied partnership creditor, subordinate to the individual creditors of the bankrupt partners but also as an individual creditor of the bankrupt partners, on equal footing with the other individual creditors of the bankrupt partners. See In re Farnum, 8 Fed.Cas. p. 1057 (No. 4,674) (Dist.Ct.D. Mass.1843); Mead v. National Bank of Fayetteville, 16 Fed.Cas. p. 1277 (No. 9,366) (Cir.Ct.N.D.N.Y.1868); In re Bradley, 3 Fed.Cas. p. 1135 (No. 1,772) (Dist.Ct.E.D.Wis.1871); In re McCoy, 150 F. 106 (7 Cir. 1906).

Alternatively, the Neaderthal court, in stating that the endorsement did not "alter the situation," might have meant that even if the partners, because of their endorsement, were jointly and severally liable in their individual capacities for the amount of the note owed by the defaulting and bankrupt maker (the partnership), set-off would nevertheless be disallowed. If this is what the court meant, then Neaderthal would be inconsistent with our statement that set-off would be allowed in the hypothetical offered as the reciprocal of our case. But Neaderthal would then be equally inconsistent with Tucker v. Oxley, which, for reasons discussed above, treated the debt of the bankrupt partnership, once the partnership estate had been exhausted, as if it were a joint and several individual liability of the partners in their personal capacities, and allowed the partnership creditor to discharge part of its debt owed to one of the partners individually by setting off the claim against the partnership. Moreover, Neaderthal, as so read, would be inconsistent with a dictum in Gray v. Rollo, where Tucker v. Oxley was interpreted to mean that if Moses Gray alone had owned the claim against the insurance company, and he rather than the insurance company were bankrupt, then the insurance "company * * * could have set off the notes of the complainant [Moses Gray] and Gaylord against the claim for insurance," 85 U.S. at 634. Pursuing this thought, the Supreme Court in Gray v. Rollo approves the "reciprocal form of this rule," noting, also by way of dictum, that under Tucker v. Oxley, set-off would be proper if Moses Gray individually owned the claim against the insurance company, the insurance company rather than Moses Gray were bankrupt, and Moses Gray sought to discharge his obligation to the insurance company, derived from notes executed jointly by Gaylord and himself, by setting off his individually owned claim—which, in its most essential aspects, is the analogue of our case.[3] The venerable maxim that

3. We do not mean our discussion of these cases to imply that Hanover could set off more than its pro rata share of its indebtedness to Sherman; the instant case presents no issue on that score. It should be noted, however, that neither was this issue present in Tucker v. Oxley, for there the creditor (the Tuckers) owning the debt against the partnership of T. & H. Moore were seeking to set off this debt against the individual claim of T. Moore and there was no indication that H. Moore was insolvent (see 9 U.S. at 38, 43), i. e., that T. Moore's estate could not fully recover H. Moore's share of the indebtedness that would be discharged by allowing the Tuckers to set off the whole indebtedness against T. Moore's individual claim. See also footnote 2, supra. And in the Gray v. Rollo dictum, where the reciprocal form of the Tucker v. Oxley rule was applied to allow set-off in an example that we consider to be the analogue of our case, there is no indication that the Supreme Court considered the propriety

a joint debt cannot be set off against a separate debt, and vice versa, see 3 Story, Equity Jurisprudence, § 1874 (14th ed. 1918), like all maxims tested by experience, has its exceptions, and this is one of them.

The order of the district court below allowing Hanover to set off one half of the Maine judgment, as it is finally determined, and reducing Hanover's claim by an equal amount is affirmed.

of allowing the creditor of the bankrupt to set off more than his share of the joint indebtedness owed to the bankrupt.